Edward Patrick CONROY, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–90–00868–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 6, 1992.

**68**

Mike Deguerin, Houston, for appellant.

John B. Holmes, Dist. Atty., Scott Durfee, Asst. Dist. Atty., Houston, for appellee.

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

Before OLIVER–PARROTT, C.J., MIRABAL and PRICE[1], JJ.

## OPINION

MIRABAL, Justice.

Appellant, Edward Patrick Conroy, was charged with murder and entered a plea of not guilty. A jury found appellant guilty of the lesser included offense of involuntary manslaughter, found he had used a deadly weapon in the commission of the offense, and assessed punishment at three years confinement. We reverse and remand.

In his first point of error, appellant asserts there was insufficient evidence to establish the element of reckless mental state to support his conviction.

In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the entire body of evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979); *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The standard of review is the same for both direct and circumstantial evidence. *Sutherlin v. State,* 682 S.W.2d 546, 548–49 (Tex.Crim.App.1984).

The evidence at appellant's trial, viewed in the light most favorable to the verdict, was as follows:

On February 5, 1985, at 3:00 a.m., after drinking at a bar for several hours, appellant and three friends returned to appellant's house, where appellant's wife, niece and nephew, and two other friends were sleeping. Appellant called an escort service, and four women came to the house.

One of the women who arrived was Elissa Anne Roberts, using the name Michelle.

Appellant paid the four women $220 each, and directed the men and women to different rooms in his house. Appellant remained in the living room, drinking beer. At some point, appellant decided it would be funny if he burst into the various rooms, with his passport and his handgun, saying that he was a vice officer and that everyone was under arrest. Appellant removed two bullets from the gun "for safety reasons," but left three bullets in the revolver's chambers.

At trial, one of the women who came to the house, Brenda Merritt, testified that at about 5:50 a.m., appellant burst into the bedroom she was in, holding the gun and the passport, saying he was a vice cop. She said appellant told her she was "busted." Merritt said she stood up to get dressed, and appellant pushed her down. Merritt slapped appellant, and he got very angry. Appellant pushed her down again, hit her on the leg and groin area with the gun, and said he would shove the gun up her vagina and shoot her if she did not do as he said. Appellant then told the man Merritt was with to sit on her so she could not get dressed. Appellant left the room, and Merritt was able to talk the man into allowing her to dress.

Appellant burst into another bedroom, where his brother, Chris, and two of the women were, again saying he was a vice officer and the women were under arrest. One of the women, Penelope Lagerstrom, realized that appellant was holding a passport and not a badge, and began laughing at appellant. Appellant put the gun against Lagerstrom's head, just above her ear, and told the women to get on the floor. Appellant called Lagerstrom a bitch and told her if she did not do as he said he would blow her away. Appellant left that room, telling his brother Chris he would return with Chris' gun. Appellant reentered Merritt's room, again telling the man she was with not to let her dress.

Appellant then went into another room in the house, where the third man and Elissa were. He opened the door to the room, holding the gun at waist level and cocked. A shot was fired, and Elissa was hit in the head. Merritt and the other women heard the shot and began calling to Elissa, but got no answer. Merritt testified she heard appellant call out, "That's a warning shot to the rest of you cunts in there." Lagerstrom testified she heard appellant say, "That's my first cunt." The man with Merritt took her into the room where Lagerstrom and the other woman were, and they stayed there until the police arrived. Once the police arrived, Merritt and Lagerstrom went to the room Elissa was in and saw that she had been shot and killed.

Appellant testified that he had not intended to shoot anyone that night, he did not see Elissa when he entered the room, and the gun just went off accidentally. Appellant said he remembered cocking the gun at some point, but he did not remember hitting anyone, pointing the gun at anyone, or pulling the trigger.

Appellant had been in the military, had been trained in the use of firearms, and had previously fired pistols on a firing range. Appellant testified he had owned the pistol for a year, and he knew the gun was loaded. He knew the gun was cocked, he knew he had his finger on the trigger when he entered the room where he shot Elissa, and he entered the room holding the gun loosely about waist high. He said he did not intend to fire the gun or to shoot anyone, let alone shoot Elissa. Appellant testified that, after the gun went off, he said it was just a warning shot so that the other people would not get scared, but he did not remember saying "you cunts." Appellant said the pistol had not gone off accidentally in the time he had owned it. Both appellant and appellant's father testified that the first thing anyone handling a gun is taught, is to always point a loaded gun at the ground, due to the danger of accidental firing. Appellant called the police and reported what had happened as an accident. The 911 tape was played for the jury.

A weapons expert testified that the gun would not go off accidentally, but only if the trigger was pulled. He said the pistol

required three and a half pounds of pressure to fire in the single action mode (with the gun cocked), and 13 pounds of pressure in the double action mode (with the hammer down). He also testified that the cylinder would rotate whenever the gun was cocked, in either direction. The gun had no safety button because it was designed to go off only when the trigger was pulled. This was described as a "mechanical safety." The gun was in good working condition.

Appellant was tried for murder, but the jury was also charged on the lesser-included offense of involuntary manslaughter. The jury charge read:

A person commits the offense of involuntary manslaughter if he recklessly causes the death of an individual.

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the defendant's standpoint.

Before a person is deemed to be "reckless," there must actually be both a substantial and an unjustifiable risk that the circumstances exist or that the result will occur, and that the person acting was actually aware of such risk and consciously disregarded it, and if you have a reasonable doubt as to any of such matters, then you would be bound to acquit the defendant of involuntary manslaughter.

Now, if you believe from the evidence beyond a reasonable doubt that on or about the 5th day of February, 1985, in Harris County, Texas, the defendant, Edward Patrick Conroy, did recklessly, as that term is herein above defined, cause the death of Elissa Anne Roberts by shooting Elissa Anne Roberts with a deadly weapon, namely, a firearm, then you will find the defendant guilty of involuntary manslaughter.

The jury charge tracked the statutes defining recklessness and involuntary manslaughter. TEX.PENAL CODE ANN. § 6.03(c) (Vernon 1974); TEX.PENAL CODE ANN. § 19.-05(a)(1) (Vernon 1989).

Appellant objected to the charge and requested an instruction to the jury on negligent homicide, submitting his requested wording. Appellant's request was denied.

Appellant contends there is nothing in the record to indicate he intended to cause serious bodily injury or death by engaging in an act clearly dangerous to human life, or that he was actually aware of the danger.

■ Intent at the time of the shooting may be inferred from the acts, words, and conduct of the appellant. *Dues v. State,* 634 S.W.2d 304, 305 (Tex.Crim.App.1982). The trier of fact may use any of the facts in evidence which prove the existence of such intent to infer the requisite intent. *Walker v. State,* 440 S.W.2d 653, 657 (Tex. Crim.App.1969); *Martinez v. State,* 699 S.W.2d 910, 913 (Tex.App.—Amarillo 1985, no pet.).

■ To be guilty of involuntary manslaughter, the actor must be *aware of the substantial and unjustifiable risk* surrounding his conduct or the results thereof, but *consciously disregard that risk. Lewis v. State,* 529 S.W.2d 550, 553 (Tex.1975). The specific intent to kill is not an element of the offense of involuntary manslaughter. *Id.* at 552.

■ Appellant, who had some knowledge of firearms, entered a darkened room he knew was occupied, holding a gun he knew was loaded and cocked. Appellant, knowing a loaded gun should always be pointed at the ground, entered the room with the gun at waist level, not pointing it at the ground or at the ceiling, with his finger on the trigger. He had previously entered two other rooms and pointed the loaded gun at other people. Appellant knew the only way the gun would fire was by pulling the trigger.

■ Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential injury, and that he points a gun at another, indicates a person who is aware of a risk created by that conduct and disregards that risk. *Dowden v. State*, 758 S.W.2d 264, 270 (Tex.Crim. App.1988).

We find that a jury could have rationally found that appellant was aware of the risk of death associated with his actions, that the risk was substantial and unjustifiable, and that he consciously disregarded that risk.

We overrule appellant's first point of error.

In point of error two, appellant asserts the trial court erred in denying his requested jury charge on negligent homicide. In point of error three, appellant asserts the trial court erred in overruling appellant's objections to the jury charge for failing to include a charge on negligent homicide.

■ When evidence from any source raises an issue and a jury charge is properly requested, the issue must be submitted to the jury. *Dowden*, 758 S.W.2d at 269. A charge on a lesser included offense should be given to the jury if the lesser included offense is within the proof of the charged offense, *and* there is evidence that if the appellant is guilty, he is guilty of *only* the lesser included offense. *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim. App.1981) (opinion of reh'g). The credibility of the evidence and whether it is controverted or conflicts with other evidence may not be considered in determining whether the charge on the lesser offense should be given. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App.1992); *Thomas v. State*, 699 S.W.2d 845, 849 (Tex.Crim.App.1985).

■ Criminally negligent homicide is a lesser included offense of murder. *Thomas*, 699 S.W.2d at 847. Criminal negligence, as a culpable mental state, is defined in § 6.03(d) of the penal code:

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX.PENAL CODE ANN. § 6.03(d) (Vernon 1989). Appellant's requested jury instruction tracked the statutory language.

■ Criminal negligence is a lesser culpable mental state than recklessness. The key to criminal negligence is that the actor failed to perceive the risk. *Dowden*, 758 S.W.2d at 270; *Still v. State*, 709 S.W.2d 658, 660 (Tex.Crim.App.1986). The mental states of recklessness and criminal negligence cannot co-exist. *Dowden*, 758 S.W.2d at 270.

■ Appellant testified that he was aware there were three bullets in the gun because he opened the chamber and checked the location of the bullets. Appellant gave the following explanation for having three rounds in the gun:

[By Defense Counsel] Q: And can you explain to the jury why there's only three rounds in the pistol?

[By appellant] A: For safety reasons.

Q: Explain that to them. Why only three. I don't understand. You say safety reasons. I don't understand. Tell me.

A. On the pistol I thought if I put the empty chamber where the trigger was and then another chamber that was empty next to the trigger, that if the trigger had ever gone off, the pistol would not fire because there was two empty chambers.

Appellant said he did not know how the gun went off; he did not intend to shoot anybody that night, but was only intending to play a joke.

■ We find this evidence raised the issue of whether appellant was criminally negligent. The trial court, therefore, erred in failing to include appellant's requested

instruction on criminally negligent homicide in the jury charge. We find the error was harmful. TEX.R.APP.P. 81(b)(2).

We sustain points of error two and three.

In his fourth point of error, appellant asserts the trial court erred in refusing to submit his requested jury charge on involuntary conduct.

■ Under TEX.PENAL CODE ANN. § 6.01(a) (Vernon Supp.1992), a person commits an act only if he engages in *voluntary* conduct, including an act, an omission, or possession. A person voluntarily engages in conduct when the conduct includes a voluntary act and its accompanying mental state, and the fact that such conduct also includes an involuntary act does not render engaging in that conduct involuntary. *Joiner v. State*, 727 S.W.2d 534, 537 (Tex. Crim.App.1987).

■ Appellant has not contested that his conduct leading up to the shooting was intentional. He merely argues that his act of shooting the deceased was unintentional. Even assuming that the discharge of the weapon was unintended, the intentional pointing of a weapon is a voluntary act and the resulting death is imputable to the appellant. *Id.; see also George v. State*, 681 S.W.2d 43, 44–45 (Tex.Crim.App.1984); *Williams v. State*, 630 S.W.2d 640, 644 (Tex.Crim.App.1982).

We find the trial court did not err in refusing to submit appellant's requested instruction on involuntary conduct.

We overrule appellant's fourth point of error.

In light of our sustaining appellant's points of error two and three, it is unnecessary to consider appellant's remaining points of error, and we decline to do so.

We reverse the judgment and remand the case to the trial court.