**Henry FUENTES, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–93–0129–CR.**

Court of Appeals of Texas, Amarillo.

July 20, 1994.

Rehearing Denied Aug. 16, 1994.

Owen, Lyle, Voss & Owen P.C., Kregg Hukill, Plainview, for appellant.

Becky McPherson, Dist. Atty., Floydada, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

Appellant Henry Fuentes, Jr., whom a jury found guilty of two counts of injury to a child, and assessed his punishment at confinement for 99 years for each count to run concurrently, and a $10,000.00 fine for each count, contends the trial court erred in admitting certain evidence and the evidence was insufficient to sustain the jury's verdict. Disagreeing, we will affirm.

In a two count indictment, the State alleged that appellant (1) did intentionally and knowingly by omission cause serious physical deficiency to LaToya Capuchino, a child younger than 15 years of age, by failing to seek medical treatment for her, and (2) did in Floyd County intentionally and knowingly cause serious bodily injury to LaToya by breaking her arm.[1] Since appellant challenges, with the last two of his four points of error, the sufficiency of the evidence to sustain the jury's verdict on each count, the challenges will be first considered, because if they are sustained, a retrial is barred. *Dunn v. State*, 721 S.W.2d 325, 327 (Tex.Cr. App.1986); *Hooker v. State*, 621 S.W.2d 597, 598 (Tex.Cr.App.1981).

■ Consideration of the evidential challenges requires that we view all the evidence, whether properly or improperly admitted, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. *Dunn v. State*, 721 S.W.2d at 327. The standard of review is employed in viewing both direct and circumstantial evidence.

*Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Cr. App.1984).

The child, LaToya Capuchino, was born 1 September 1992[2] to appellant's cousin, Cecilia Capuchino, who, the next day, gave possession of the child to, and left its care and custody in, appellant and his wife, Eloisa Fuentes, residents of Floydada. There was testimony that apparently sometime in September, appellant, his wife, and the child went to Plainview. On October 2, appellant, his wife, and the child went to Ballinger to visit his mother who, after they left, called the Department of Human Services, expressing concern for the child's welfare. On October 4, Floydada police, notified of the call, looked for the baby, but were unable to find her because of an incorrect address.

On October 7, appellant and his wife, went to Lockney, where they had appointments for themselves with doctors. They took LaToya with them, but left her in the car and did not ask a doctor to see her. Arriving back in Floydada the same day and noticing that LaToya did not have much strength and was having a hard time breathing, they drove her to the sheriff's office. Upon arriving, the dispatcher, seeing that LaToya was unconscious, began cardiopulmonary resuscitation. Paramedics, who found LaToya so dehydrated that they could not find a vein in which to start an I.V., even after they cut the skin looking for one, transported her to the hospital in Lockney, where she was seen by Dr. Gary Mangold, who found her barely alive. LaToya was flown to a hospital in Lubbock, where she was cared for by Dr. Balu Viswanathan, the medical director of the pediatric intensive care unit, who consulted with an orthopedic surgeon and an assistant professor of pediatrics infectious disease services regarding her medical problems.

Doctor Viswanathan diagnosed LaToya as comatose, non-responsive, emaciated, dehydrated, having a low heart rate, and with minimal vital organ functions. His examination also revealed that her left eye was bulging and cloudy due to glaucoma which, if untreated, would most likely have caused

---

1. Tex.Penal Code Ann. § 22.04(a)(2), (4) (Vernon Supp.1994).

2. All dates recited are in the calendar year 1992.

blindness and severe vision loss in her other eye. The condition had existed for a few days at the least, and was noticeable even by a lay person. She had skin lesions, which probably were insect and rodent bites. In the doctor's opinion, LaToya's overall condition evidenced a poorly kept child. Another doctor testified that considering the baby's condition, she would have to have been sick with either diarrhea or vomiting, for at least thirty-six, and probably for forty-eight to seventy-two, hours before she was taken to the sheriff's office.

X-rays showed that LaToya had sustained a broken right arm and a broken left leg. According to the treating and consulting doctors, her arm had been broken for ten to fourteen days prior to the X-rays being taken on October 7, and was caused by someone twisting her arm. The broken leg was less than a week old, and resulted from a fracture intentionally caused by significant force applied from the bottom of the foot toward the knee.

According to all the State's witnesses who saw the child, anyone could tell she was a very sick baby. LaToya never regained consciousness and died on October 10, less than six weeks after her birth.

Appellant's wife, Eloisa, gave a statement to the Floydada Chief of Police and testified before the grand jury, the admission of both of which are the subjects of appellant's first two points. In her statement and testimony, Eloisa admitted to having the care and custody of LaToya, and said appellant told her, at a time the evidence showed they were in Floyd County, that he thought the baby's arm was broken. Although she knew the baby should have been taken to the doctor, she did not take her because appellant, of whom she was afraid, would not let her, and because she was afraid she would be in trouble with the police and her other children would be taken away.

Appellant also gave a written statement and testified before the grand jury, and makes no complaint of their admission into evidence. In his statement, appellant said that LaToya was "signed ... over" to him and his wife, and that, "I can not remember hurting the baby, but if I was drunk and blacked out I could have hurt the baby and not known it." In his grand jury testimony, appellant, confirming that he had custody of LaToya, said that she was normal, denied noticing any symptoms of illness, and admitted that she had the scratches and bite marks for two weeks. He knew that the baby should have been taken to the doctor two weeks after she was born, but he did not take her. When asked about LaToya's broken arm and broken leg, he replied that when he got drunk, he may have caused those breaks and, denying that nobody else had any contact with her or that his wife broke them, conceded that it had to be him.

In challenging the sufficiency of the evidence, appellant asserts the conviction is based on circumstantial evidence, which is insufficient to support his conviction. Specifically, he contends the evidence is insufficient because there is no direct evidence of his mental state, *i.e.*, that he had a conscious objective or desire to cause serious bodily injury to LaToya by omission to seek medical treatment for her; or that he broke her arm; or that her arm was broken in Floyd County.

Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *Morales v. State,* 828 S.W.2d 261, 263 (Tex.App.—Amarillo 1992), *aff'd,* 853 S.W.2d 583 (Tex.Cr.App.1993). Ordinarily, the culpable mental state must be inferred from the acts of the accused or the surrounding circumstances, *Ledesma v. State,* 677 S.W.2d 529, 531 (Tex.Cr.App.1984), which include not only acts, but words and conduct. *Morales v. State,* 828 S.W.2d at 263. In determining whether the requisite mental state existed, the jury is the sole judge of the weight of the evidence and the credibility of the witnesses, and it may believe or disbelieve all or any part of any witness's testimony. *Id.*

The evidence is undisputed that before October 7, appellant did not seek medical care for the baby, although he knew that she should have been taken to the doctor; and, even though he thought the baby's right arm was broken, and later conceded that he must have done it, he would not let his wife take the baby to the hospital. Medical wit-

nesses testified to the child's deteriorating condition, symptoms of which were obvious for some time even to a lay person; indeed, appellant's mother, having only a brief visit with the baby on October 2, expressed concern for her welfare. Medically, the conclusion was reached that she was very sick and a poorly kept child. This evidence was sufficient for the jury to infer that appellant intentionally or knowingly by omission caused serious physical deficiency to LaToya by failing to seek medical treatment. *Accord Morales v. State,* 828 S.W.2d at 265.

■ Appellant also argues the evidence is insufficient to prove he broke LaToya's arm or that it was broken in Floyd County, because no one testified he broke her arm and the evidence shows that he and his family traveled outside Floyd County on at least two occasions, once to Ballinger and once to Plainview. However, the evidence revealed that appellant was in Floyd County with the baby when he notified his wife that the baby's right arm was broken, and he conceded that he must have been the one who broke her arm. This evidence was sufficient for the jury to find that appellant broke LaToya's arm in Floyd County. *Accord Hooker v. State,* 621 S.W.2d at 602. Appellant's points of error three and four are overruled.

As previously mentioned, appellant's wife, Eloisa, gave a statement to the chief of police and testified before the grand jury. She was also indicted for the offense of injury to a child, and was subpoenaed by the State to be a witness at appellant's trial. Outside the presence of the jury, she, on the advice of counsel, refused to testify, invoking her privilege against self-incrimination.

The State offered the statement she had given to the police chief. Included in the statement was her acknowledgment of custody of LaToya, and this language:

Around the middle of September some of my friends were at the house. Henry told us to go to the store for something, I don't remember what. Later that day after my friends left, Henry called me and told me that the kids of my friends might have hurt the baby and he thought her right arm was broken. The first thing I

though was that Henry had hurt the baby and was trying to blame the kids.

I wanted to take the baby to the hospital, but Henry would not let me. He told me that "they" would take my kids away from me.

When Laytoia (sic) would cry loud, Henry would spank her until she quite (sic) crying. He would then tell me that was all you had to do, just spank her until she falls asleep. I was afraid to hold the baby because if it started crying Henry would whip her again.

\*   \*   \*   \*   \*   \*

Henry would tell my youngest child to hit Laytoia (sic) and Jonathan would until I stopped him. Jonathan is only one year old and will do what his Dad shows him to do....

Appellant unsuccessfully objected to the offer on grounds previously stated to the trial court, one of which was hearsay.

Of course, the statement, offered to prove the truth of the matters asserted in it, was hearsay. Tex.R.Crim.Evid. 801(d). As such, the statement was not admissible over appellant's hearsay objection, unless some exception to the hearsay rule permitted its admission. The State represented that the statement was a statement against interest, an exception to the hearsay rule cast in these words:

(24) **Statement Against Interest.** A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Tex.R.Crim.Evid. 803(24).

On appeal, appellant uses his second point of error to contend the hearsay statement

was not "admissible pursuant to any exception under rule 804, Texas Rules of Criminal Evidence (sic)." He argues that Eloisa's statement was not a statement against interest; but, if it was, he was denied his federal constitutional right of confrontation and cross-examination,[3] because the State, which had asserted Eloisa was unavailable as a witness, had the opportunity to grant her immunity to secure her testimony.

■ As a threshold matter, appellant has not questioned the existence of corroborating circumstances to clearly indicate the trustworthiness of Eloisa's statement. Then, given the medical evidence, Eloisa's statement clearly exposed her to criminal liability. Recounting that she had custody of LaToya and knew she needed medical care, which she, Eloisa, omitted to provide, Eloisa's statement implicated her in the crime for which appellant was being tried and, if true, made her guilty of the offense of injury to a child. *Ahearn v. State*, 588 S.W.2d 327, 336 (Tex. Cr.App.1979); *Chapa v. State*, 747 S.W.2d 561, 563 (Tex.App.—Amarillo 1988, pet'n ref'd). Moreover, not only is her claim against self-incrimination an indication that her statement tended to expose her to criminal liability, *Davis v. State*, 872 S.W.2d 743, 747 (Tex.Cr.App.1994), but the fact that she was thereafter indicted, assured that her statement did expose her to criminal liability.

■ We do not credit appellant's argument that the admission of Eloisa's statement deprived him of his federal constitutional right of confrontation and cross-examination, because the State would not make her available as a witness. As a rule 803(24) statement against interest, her statement is "not excluded by the hearsay rule, even though the declarant is available as a witness." Tex.R.Crim.Evid. 803. Thus, the rule negates the unavailability of the declarant as a predicate for the admission of the statement. *Accord Lewis v. State*, 856 S.W.2d 271, 275 (Tex.App.—Texarkana 1993, no pet'n).

As a result, and contrary to appellant's contention, the trial court did not err in admitting the statement. His second point of error is overruled.

With his initial point, appellant contends the court erred in admitting Eloisa's grand jury testimony over his hearsay objection. He argues that the constitutional requirements of confrontation and cross-examination were not met, particularly since Eloisa was not unavailable as a witness, because the State could have granted her immunity.

■ Although the State responds that her testimony constituted a statement against interest and was admissible under rule 803(24), *supra*, the admissibility of the hearsay testimony is governed by the former testimony exception in rule 804(b)(1), Texas Rules of Criminal Evidence. *Jones v. State*, 843 S.W.2d 487, 490–91 (Tex.Cr.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993). The rule provides, in material part, that:

(b) **Hearsay Exceptions.** The following are not excluded if the declarant is unavailable as a witness:

(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

· · · · ·

Consequently, Eloisa's grand jury testimony was inadmissible over appellant's hearsay objection unless she was unavailable as a witness.

■ One who gives testimony before a grand jury is unavailable as a witness if he "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement." Tex.R.Crim.Evid. 804(a)(1). Thus, when Eloisa invoked her Fifth Amendment privilege not to testify, she was unavailable as a witness. *Jones v. State*, 843 S.W.2d at 490. Notwithstanding, she was available as a witness to the State, even though she had been indicted for the same offense and had invoked her privilege not to testify, because

3. *See* U.S. CONST. amend. VI.

the State had the authority to grant her immunity. *Id.* n. 2.

If Eloisa's testimony, grand jury or in-court, was of sufficient importance to the State's prosecution of appellant, the State could forego its prosecution of her by a grant of immunity, and introduce her testimony. Of course, the State was not required to grant Eloisa immunity; but, in that event, the State could not rely on her unavailability to introduce her grand jury testimony.

■ Because the State did not show that Eloisa was unavailable as a witness, her grand jury testimony was not admissible under rule 804(b)(1), *supra,* and the trial court erred in admitting it. Nevertheless, the error did not amount to reversible error.

Eloisa's grand jury testimony was not so definite as her statement given to the police chief. According to her testimony, she did not take the baby for a check-up because she "hadn't got her Medicaid yet"; she did not express, as she did in her statement, that she thought appellant had broken the baby's arm; she was only told, but did not know, that the baby's arm was broken, and would have taken the baby to the doctor but appellant, of whom she was afraid, told her not to do so; and she did not take the baby to the doctor, because "she was doing fine," until the day they took her to the sheriff's office.

There is nothing material in Eloisa's grand jury testimony which was not included in her properly admitted statement given to the police chief, or in the unobjected to testimony of other witnesses. Thus, the erroneous admission of the testimony did not amount to error which affected the substantial rights of appellant. Tex.R.Crim.Evid. 103(a). As a result, the erroneous admission passes the test that there is not a reasonable possibility that it might have contributed to appellant's conviction or punishment. *Anderson v. State,* 717 S.W.2d 622, 628 (Tex.Cr.App.1986). Appellant's first point of error is overruled.

The judgment is affirmed.