**Gerald Steven TODD, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–93–00246–CR.

Court of Appeals of Texas,
El Paso.

Nov. 9, 1995.

808

T.W. Proctor, T.W. Proctor & Associates, Houston, for appellant.

John B. Holmes, District Attorney of Harris County, Houston, for state.

## OPINION

McCLURE, Justice.

Gerald Steven Todd appeals from a conviction for the offense of criminally negligent homicide. Upon the jury's finding of guilt, the trial court assessed punishment at one year in the county jail, probated for two years, and a fine of $500. Appellant challenges his conviction by twenty points of error. We affirm the judgment of the trial court.

### Presentment of the Information

In Point of Error No. One, Appellant contends that the trial court lacked jurisdiction because the information does not reflect that it was presented to the proper court. After Appellant entered his plea of not guilty at trial, he objected to the information on the ground that it is defective for failure to reflect in which court it had been filed. The failure to place the court number on the information when the case is present-

ed does not affect the validity of the presentment. *Queen v. State,* 701 S.W.2d 314, 315–16 (Tex.App.—Austin 1985, pet. ref'd). If the information is delivered to the clerk's office by the prosecuting attorney, as it was in this case, it is properly presented. *Id.* at 315–16. Point of Error No. One is overruled.

### Sufficiency of the Information

In Point of Error No. Two, Appellant asserts that the information does not allege criminally negligent homicide because the facts alleged show nothing more than ordinary negligence. Appellant did not file a motion to quash or otherwise object on this ground at trial. In the absence of an objection, this complaint is waived. TEX.CODE CRIM.PROC.ANN. art. 1.14(b) (Vernon Supp. 1995); *Aguilar v. State,* 846 S.W.2d 318, 319–20 (Tex.Crim.App.1993); *Studer v. State,* 799 S.W.2d 263, 268–73 (Tex.Crim.App.1990). Point of Error No. Two is overruled.

### Failure to Grant Motion for Continuance and Disqualification of Special Judge

In Point of Error No. Three, Appellant contends that the court erred in failing to grant his motion for continuance in which he objected to the appointment of the special judge. In the same point of error, he also argues that the special judge was disqualified and therefore, the judgment of conviction is void. On June 7, 1993, the presiding judge of the County Criminal Courts at Law in Harris County, Texas, signed an order appointing Eric Hagstette to act as special judge for Neel Richardson, the judge of the County Criminal Court at Law No. 8. The appointment covered a time period from June 28, 1993 through July 2, 1993. Hagstette executed an oath of office on June 7, 1993.

Appellant filed a motion for continuance on the day of trial, complaining of his unfamiliarity with an unelected special judge. The special judge denied the motion for continuance by written order the same day. On appeal, Appellant contends that his motion for continuance should have been granted since he did not receive notice of the appointment and an opportunity to be heard with regard thereto. Appellant did not raise this

objection at trial, nor did he assert a lack of notice as a basis for his motion for continuance. The State contends that error is waived because the objection at trial does not comport with the argument raised on appeal. We agree in part. Insofar as Appellant raises this contention in the context of the failure to grant the motion for continuance, Appellant's failure to raise this ground at trial constitutes waiver. Tex.R.App.P. 52(a). However, to the extent Appellant raises his contentions concerning the special judge in terms of disqualification, they are not waived. *See Johnson v. State*, 869 S.W.2d 347, 348–49 (Tex.Crim.App.1994). We will address the disqualification issues first.

The presiding judge appointed the special judge pursuant to Section 25.1033(I) of the Government Code. Tex.Gov't Code Ann. § 25.1033(I) (Vernon 1988). Section 25.1033(I) provides that a special judge may be appointed as provided for by Section 75.403 of the Government Code. Under Section 75.403, the presiding judge for certain Harris County courts may appoint a special judge to serve in the place of an absent judge. Tex.Gov't Code Ann. § 75.403(e) (Vernon 1988). The qualifications, duties, and powers of a special judge are the same as for the regular judge. Tex.Gov't Code Ann. § 75.403(e) (Vernon 1988). The provisions of Articles 30.04, 30.05, and 30.06 of the Code of Criminal Procedure, which relate to the oath, compensation, and record of appointment of certain special judges, apply to the appointment of a special judge under this subsection. Tex.Gov't Code Ann. § 75.403(e) (Vernon 1988).

■ Appellant first asserts that he did not receive the requisite notice and hearing regarding the appointment of the special judge as required by Tex.Gov't Code Ann. § 26.022(b) (Vernon 1988). However, the subchapter in which that provision is included applies only in counties with no statutory county court at law or statutory probate court and all duties of the county court devolve upon the county judge. Tex.Gov't Code Ann. § 26.021 (Vernon 1988). County Criminal Court at Law No. 8 is a statutory county court at law. Tex.Gov't Code Ann. § 25.1031(b)(8) (Vernon 1988 and Vernon Supp.1995). Accordingly, the hearing and notice provisions of Section 26.022(b) do not apply in the instant case.

■ Next, Appellant asserts that the special judge was disqualified because the clerk of the trial court failed to comply with Article 30.05 of the Code of Criminal Procedure. In the event a special judge is agreed upon by the parties, elected, or appointed, Article 30.05 requires the clerk to make a record of the event by entering in the minutes that the judge of the court was absent, that the special judge was agreed upon by consent of the parties, or elected, or appointed, and that the oath of office was duly administered to the special judge. Tex.Code Crim.Proc.Ann. art. 30.05 (Vernon 1989). The record before us contains the presiding judge's order appointing the special judge to act during the absence of the regular judge, and the oath of office executed by the special judge. The presiding judge ordered the clerk to enter into the minutes the order appointing the special judge and the oath of office executed by the special judge. Because the appellate record before us does not contain the minutes, however, we are unable to determine whether the clerk entered the information as required by Article 30.05 and the judge's order. There is nothing in the record to indicate that the clerk did not comply with this order or with her statutory duty. Appellant's contention is not supported by the record. Therefore, nothing is presented for our review.

■ Appellant also argues, without citing any authority, that Article 30.05 impliedly entitles him to notice of the appointment of the special judge. Appellant fails to recognize that Article 30.05 concerns only the duty of the clerk to enter certain information into the minutes, thereby recording the event. We are unable to read any affirmative notice requirement into the statute. For these reasons, Appellant's argument that the special judge is disqualified is without merit.

■ Turning our attention to the motion for continuance, appellant contends that the lack of notice of the special judge's appointment deprived him of the effective assistance of counsel because counsel necessarily based his advice and trial strategy upon a belief

that the elected judge would be trying the case. He also claims that his right to equal protection is violated by the lack of a notice requirement. Appellant failed to raise either of these specific arguments at trial.[1] Therefore, the asserted errors are waived. TEX. R.APP.P. 52(a).

■ Even if error is preserved with regard to the assistance of counsel claim, it is without merit. While counsel stated he provided Appellant with certain advice concerning the punishment election, there is no evidence in the record to support Appellant's claim that he based his election solely upon that advice. After learning of the appointment of the special judge, Appellant did not attempt to change his election. Furthermore, Appellant is not entitled to have a particular judge preside over his case or assess his punishment. *Benjamin v. State*, 874 S.W.2d 132, 134 (Tex.App.—Houston [14th Dist.] 1994, no pet.). Accordingly, the trial court did not abuse its discretion in denying Appellant's motion for continuance. *See Cooks v. State*, 844 S.W.2d 697, 725 (Tex. Crim.App.1992); *Turner v. State*, 850 S.W.2d 762, 767–68 (Tex.App.—El Paso 1993, pet. ref'd). Point of Error No. Three is overruled.

### Denial of Challenge for Cause

■ In his fourth point of error, Appellant asserts that the trial court erred in failing to excuse juror Dyess for cause under Article 35.16(a)(10) of the Code of Criminal Procedure, on the ground that he had formed a conclusion as to Appellant's guilt that would influence his verdict. Appellant correctly contends that he preserved error. *Hughes v. State*, 878 S.W.2d 142, 151 (Tex. Crim.App.1992) (op. on reh'g); *Harris v. State*, 790 S.W.2d 568, 581 (Tex.Crim.App. 1989).

■ A juror may be challenged for cause by either party if, from hearsay or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influ-

ence him in his action in finding a verdict. TEX.CODE CRIM.PROC.ANN. art. 35.16(a)(10) (Vernon 1989); *Coble v. State*, 871 S.W.2d 192, 200 (Tex.Crim.App.1993). This Court will not disturb a trial court's ruling on a challenge for cause absent an abuse of discretion. *Robison v. State*, 888 S.W.2d 473, 477 (Tex.Crim.App.1994); *Adanandus v. State*, 866 S.W.2d 210, 222 (Tex.Crim.App. 1993). We defer to the trial court's ruling on these matters, as the judge is in the best position to see and hear the veniremembers. *Robison v. State*, 888 S.W.2d at 478; *McCoy v. State*, 713 S.W.2d 940, 945 (Tex.Crim.App. 1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Laca v. State*, 893 S.W.2d 171, 181 (Tex.App.—El Paso 1995, pet. ref'd).

During voir dire, Dyess made the court and the parties aware that one of his family members had been killed in an automobile accident and his wife had been in an accident two weeks before trial. He expressed a fear that he might not be fair as a result of these personal experiences. After further questioning, however, he stated that his personal experiences would not influence his verdict and he would find Appellant not guilty if the state failed to prove its case. Contrary to Appellant's interpretation of Dyess's statements, nothing in his voir dire testimony indicated he had formed a conclusion as to Appellant's guilt that would influence his verdict. The trial court did not abuse its discretion in overruling Appellant's challenge for cause. *Teague v. State*, 864 S.W.2d 505, 515 (Tex.Crim.App.), *overruled in part on other grounds*, 871 S.W.2d 701, 712 n. 13 (Tex. Crim.App.1993); *Harris v. State*, 784 S.W.2d 5, 23 (Tex.Crim.App.1989). Point of Error No. Four is overruled.

### Sufficiency of the Evidence— Criminal Negligence

■ In Points of Error Nos. Five and Six, Appellant contends that the trial court erred in denying his motion for instructed verdict on the ground that the evidence was

---

1. When presenting the motion for continuance at trial, Appellant's counsel stated to the trial court that Appellant had elected to have the court assess punishment believing that Judge Richardson would be presiding at the trial. Stating that

he was unfamiliar with the special judge's "track record," he claimed that he could not advise Appellant with regard to the punishment election. Appellant did not complain of the lack of notice as he does on appeal.

insufficient to establish the culpable mental state of criminal negligence. A challenge to the trial judge's ruling on a motion for instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990), *cert. denied,* 498 U.S. 1301, 111 S.Ct. 902, 112 L.Ed.2d 1026 (1991). If the evidence is sufficient to sustain the conviction, then the trial judge did not err in overruling Appellant's motion for instructed verdict. *Id.* at 686.

In reviewing the sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both state and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991). We do not resolve any conflict of fact or assign credibility to the witnesses as it was the function of the trier of fact to do so. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim. App.1991). Instead, an appellate court's duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman,* 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson,* 819 S.W.2d at 843.

Former Section 19.07(a) of the Penal Code provided that "[a] person commits an offense if he causes the death of an individual by criminal negligence." Acts 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex.Gen.Laws 883, 913, renumbered from § 19.06 by Acts 1973, 63rd R.S., ch. 426, art. 2, § 1, 1973 Tex.Gen. Laws 1123, 1124, renumbered from § 19.07 and amended by Acts 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3614 [current version found at Tex.Penal Code Ann. § 19.05]. The information, omitting the formalities, alleged that Appellant did then and there:

> [O]perate a motor vehicle and cause his vehicle to collide with a vehicle occupied by JOSE SAENZ, JR., hereafter styled the

Complainant, and by criminal negligence did cause the death of the Complainant, by operating his vehicle at a greater rate of speed than was reasonable and prudent under the existing conditions, and by failing to maintain a proper lookout for the vehicle occupied by the Complainant, and by failing to maintain an assured clear distance between his vehicle and the vehicle occupied by the Complainant and by these acts caused his motor vehicle to collide with the motor vehicle occupied by the Complainant causing the death of the Complainant.

The application paragraph of the court's charge tracked the information. In accordance with the statutory definition, the trial court instructed the jury that "criminal negligence" means:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex.Penal Code Ann. § 6.03(d) (Vernon 1994).

A comparison of "criminal negligence" with "recklessness" is useful in understanding what the State was required to prove in this case. Criminal negligence is a lesser culpable mental state than recklessness. Tex.Penal Code Ann. § 6.03(c), (d) (Vernon 1994); *see Conroy v. State,* 843 S.W.2d 67, 71 (Tex.App.—Houston [1st Dist.] 1992, no pet.). Criminal negligence involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof. *Lugo v. State,* 667 S.W.2d 144, 147–48 (Tex.Crim.App. 1984); *Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Crim.App.1975). Reckless conduct involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but conscious-

ly disregards that risk. *Id.* At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct; the key to criminal negligence is found in the failure of the actor to perceive the risk. *Id.*

 Proof of a culpable mental state generally relies upon circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim. App.1978). Ordinarily, it must be inferred from the acts, words, and conduct of the accused and the surrounding circumstances. *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex. Crim.App.1984); *Fuentes v. State*, 880 S.W.2d 857, 860 (Tex.App.—Amarillo 1994, pet. ref'd). The issue of whether criminal negligence is shown, that is, whether one should be aware of a requisite risk, is a conclusion to be drawn through inference from all the circumstances by the trier of fact. *Dillon*, 574 S.W.2d at 94.

The evidence at trial showed that a pickup truck driven by Appellant struck the rear of the victim's vehicle during rush hour traffic on Beltway 8 in Harris County. Paul Torres testified that Appellant had been tailgating him in the inside left lane for approximately one and a half miles before the accident. From approximately a half mile away, Torres observed a red Mustang stopped in his lane of traffic with its emergency flashers operating. He saw vehicles in the left lane move to the center and far right lanes to avoid the Mustang. Fearing that Appellant might strike him if he did not get over, he moved into an adjacent lane of traffic in what he believed to be sufficient time for Appellant to see the Mustang. Torres passed the Mustang and, looking in his rear view mirror, saw Appellant looking off to the left and traveling at a high rate of speed as he approached the Mustang. Appellant then struck the victim's vehicle. Torres said that as many as five seconds elapsed from the time he moved over until Appellant struck the vehicle. Torres did not hear Appellant apply his brakes. No skid marks were found at the scene.

Linda Romero also observed the accident. When she observed Appellant moving up fast behind her and changing from lane to lane, she moved into another lane, and Appellant passed her on the left. Torres' car moved out of the left lane into the center lane and Appellant then accelerated past him. Rome-

ro noticed that Appellant appeared not to be watching the road ahead of him. Appellant then struck the victim's vehicle.

Kenneth Bell testified that Appellant passed him shortly before the accident. He noticed that Appellant appeared to want to change lanes, but he could not do so because traffic in Bell's lane was traveling slower than Appellant. Bell became concerned because Appellant, driving close behind another vehicle, kept looking to his right and gesturing with his hands as though he were talking to a passenger. Bell did not see the impact with the Mustang but he saw the rear of the truck veer up before moving into the median. He did not see Appellant's brake lights come on at the time of the impact.

We conclude that a rational trier of fact could infer from the evidence that an ordinary or reasonably prudent person ought to have been aware that a substantial and unjustifiable risk was created where Appellant traveled closely behind another car in excess of the speed limit and during rush hour traffic, failed to watch the traffic in front of him, and failed to apply his brakes before striking a stalled vehicle. Therefore, the evidence is sufficient to establish the culpable mental state of criminal negligence. *See Lopez v. State*, 630 S.W.2d 936 (Tex.Crim.App. 1982) (evidence sufficient to support finding of criminal negligence where defendant exceeded the speed limit and ran a red light on a city thoroughfare at 11:30 p.m.); *Brown v. State*, 773 S.W.2d 65 (Tex.App.—Fort Worth 1989, pet. ref'd) (evidence sufficient to support finding of criminal negligence where defendant was driving at high rate of speed, failed to slow down as he approached intersection and failed to watch traffic light); *Thompson v. State*, 676 S.W.2d 173 (Tex. App.—Houston [14th Dist.] 1984, no pet.) (evidence sufficient to support finding of criminal negligence where defendant drove her car at an excessive rate of speed in a residential neighborhood near a bus stop at a time of the early morning when children normally would be on their way to school). Points of Error Nos. Five and Six are overruled.

### Failure to List Cynthia Quinones as a Witness

In his seventh point of error, Appellant alleges that the trial court committed reversible error by allowing Cynthia Quinones, a passenger in the car with the victim at the time of the accident, to testify because the State failed to timely identify her as a potential witness. Appellant filed a motion for discovery requesting the identity and location of any person known by the State to have knowledge of relevant facts, whether the State intended to use the witness or not. The trial court ordered the State to provide this information no later than three weeks before trial and by May 17, 1993. Appellant alleges that the State failed to timely identify Quinones as a witness because he did not learn that the State intended to use her as a witness until June 9, 1993.

We note first that Appellant made no request that he be provided with a list of witnesses which the State intended to call at trial. In accordance with Appellant's request, the court ordered that the State provide Appellant with the name and location of any person who had knowledge of relevant facts. Appellant's counsel admitted that by April 26, 1993, he was aware of Quinones's identity. Counsel believed that he saw her name on the accident report in the State's file or that he had discussions with someone in the District Attorney's Office about her. On the record before us, it therefore appears that the State timely complied with the trial court's order to supply the "identity and location" of any person known by the State to have knowledge of relevant facts. Accordingly, we overrule Appellant's seventh point of error.

### Conditions of Probation

In Points of Error Nos. Eight and Nine, Appellant contends that certain of the terms of probation are impermissible. Addressing Point of Error No. Nine first, Appellant complains of the term of probation which requires him to pay $14,597.00 in restitution to the family of the victim, unless he provides proof of payment by his insurance company. Appellant claims that the victim's family has refused to accept an offer from his insurance company of $20,000. He asks this Court to reform the condition so that the tender by his insurance company fully satisfies it.

A trial court has discretion to order a probationer to pay restitution to the victim as a condition of probation, so long as the amount set by the court has a factual basis in the record and is just. *Martin v. State*, 874 S.W.2d 674, 676–77 (Tex.Crim.App.1994); Acts 1989, 71st Leg., R.S., ch. 785, § 4.17, 1989 Tex.Gen.Laws 3498, 3504–05 [current version at TEX.CODE CRIM.PROC.ANN. art. 42.12, § 11 (Vernon Supp.1995) ].[2] Contrary to Appellant's assertions, the amount set by the court is factually supported by the testimony of the victim's mother and we find it is just. Even though Appellant testified that his insurance company had tendered an offer of $20,000 to the victim's family, there is no evidence that the family refused that offer. In fact, the victim's mother testified that she was unaware that the insurance company had made such an offer. Because the record does not support Appellant's contention, nothing is presented for our review. Point of Error No. Nine is overruled.

In Point of Error No. Eight, Appellant first challenges the condition of probation which requires him to not commit any traffic violations. Appellant makes the rather speculative suggestion that the victim's family might convince a police officer to give Appellant an unwarranted ticket, thereby causing him to violate his probationary terms. This argument is wholly without merit. The trial court may impose any probationary condition that is reasonably related to the treatment of the accused and the protection of the public. *Simpson v. State*, 772 S.W.2d 276, 278 (Tex.App.—Amarillo

2. The Legislature amended Article 42.12, § 11 in 1993, deleting all references to restitution, and added TEX.CODE CRIM.PROC.ANN. art. 42.037 (Vernon Supp.1995) which now governs restitution. Acts 1993, 73rd Leg., R.S., ch. 806, § 2, 1993 Tex.Gen.Laws 3209. Because the instant offense was committed prior to the effective date of the amendment, however, the former version of Article 42.12, § 11 applies. *See Cotten v. State*, 893 S.W.2d 200, 204 (Tex.App.—Fort Worth 1995, no pet.). All references to Article 42.12, § 11 hereinafter refer to the former version unless noted otherwise.

1989, no pet.); *Macias v. State,* 649 S.W.2d 150, 152 (Tex.App.—El Paso 1983, no pet.). Article 42.12, Section 11 expressly permits the trial court to require that a defendant commit no offense against the laws of this state, which would include traffic laws. Former TEX.CODE CRIM.PROC. art. 42.12, § 11(a)(1). Moreover, given the nature of this offense, a requirement that Appellant commit no traffic violations is reasonably related to the protection of the public and to Appellant's rehabilitation.

■ Appellant next complains of the term of probation requiring him to perform 100 hours of community service in a place where the aftermath of auto accidents can be observed. The trial court is authorized to require Appellant to serve community service as a condition of probation. Former TEX. CODE CRIM.PROC. art. 42.12, § 11(a)(10); Acts 1989, 71st Leg., R.S., ch. 785, § 4.17, 1989 Tex.Gen.Laws 3498, 3505, 3511 (former Article 42.12, § 17, current version at TEX.CODE CRIM.PROC. art. 42.12, § 16). While somewhat unusual, the requirement that the community service be performed in a place where Appellant will observe the effects of automobile accidents is reasonably related to Appellant's rehabilitation. We find no abuse of discretion.

Next, Appellant asserts, without citing any authority, that the condition requiring him to serve twenty days confinement in the county jail is impermissible. The Code of Criminal Procedure authorizes the trial court to assess up to thirty days' detention in the county jail as a condition of probation. TEX.CODE CRIM. PROC.ANN. art. 42.12, § 12 (Vernon Supp. 1995). The trial court did not abuse its discretion. *See Simpson,* 772 S.W.2d at 278; *Custard v. State,* 746 S.W.2d 4, 7 (Tex.App.—Dallas 1987, pet. ref'd).

Appellant also attacks the trial court's decision to place him on maximum supervision probation. A trial court's discretion in requiring conditions of probation is broad. *Tamez v. State,* 534 S.W.2d 686, 691 (Tex.Crim. App.1976); *Simpson,* 772 S.W.2d at 278. We have no basis for disturbing the trial court's determination that Appellant required this level of supervision.

■ Finally, Appellant contends that the condition of probation requiring him to write letters of apology to the victim's girlfriend and family is an unreasonable one.[3] The stated purpose of the adult probation statute is "to place wholly within the State courts of appropriate jurisdiction the responsibility for determining ... the conditions of probation ... [and] ... to remove from existing statutes the limitations ... that have acted as barriers to effective systems of probations in the public interest." *Chauncey v. State,* 877 S.W.2d 305, 310 n. 2 (Tex.Crim. App.1994); TEX.CODE CRIM.PROC.ANN. art. 42.12, § 1 (Vernon Supp.1995). Within that framework, trial courts have been given wide discretion in selecting terms and conditions of probation. *Fielder v. State,* 811 S.W.2d 131, 134 (Tex.Crim.App.1991); *Salinas v. State,* 514 S.W.2d 754 (Tex.Crim.App.1974); *see also* TEX.CODE CRIM.PROC.ANN. art. 42.12, § 3(a) (Vernon Supp.1992). A specific condition of probation will be found to be invalid if it embraces all three of the following characteristics.

(1) it has no relationship to crime;
(2) it relates to conduct that is not in itself criminal; and
(3) it forbids or requires conduct that is not reasonably related to future criminality of defendant or does not serve statutory ends of probation.

*Lacy v. State,* 875 S.W.2d 3 (Tex.App.—Tyler 1994, pet. ref'd). On the other hand, if the conditions of probation are clear, explicit, and unambiguous so that the probationer understands what is expected of him or her, and further, if such conditions bear a reasonable relationship to the treatment of the probationer and the protection of the public, the imposition of such conditions of probation will not be disturbed on review. *See Tamez,* 534 S.W.2d at 691; *Macias,* 649 S.W.2d at 152.

■ Appellant contends that condition of probation number (42) which requires him to write letters of apology to the victim's girlfriend and family is self-defeating and ludicrous. Implicit in the purposes behind the imposition of the varied conditions of proba-

---

**3.** The court ordered Appellant to write a letter of apology to the victim's girlfriend and parents on the first and second anniversaries of the offense and on the last day of his term of probation.

tion is the need to afford the trial court the necessary discretion to tailor such conditions in order to insure that the probationer fully understands the nature and consequences of his or her actions and thus aid in any rehabilitative effort.[4] Absent an abuse of discretion, this Court will not disturb the imposition of any such conditions.

■■■■ The record reflects that the trial court heard extensive evidence during the punishment phase of the trial, both as to the character of the Appellant as well as the impact of his actions on secondary victims. The trial court specifically noted his expectation that the conditions of probation which were to be imposed would make an impression upon Appellant and would aid in helping the family of the deceased get their lives back together.[5] In the punishment phase of a trial, as in all other aspects in which the trial court sits as the fact finder, it is the trial court that weighs the credibility of the witnesses. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Gaines v. State,* 874 S.W.2d 733 (Tex.App.—Houston [1st Dist.] 1994, no pet.). Likewise, it is the fact finder that determines the punishment to be assessed as well as the likelihood of rehabilitation. Given the above, we find that the condition of probation requiring Appellant to send letters of apology to his victims constituted a reasonable exercise of discretion. Such condition had both reasonable relation to crime and the defendant's future criminality, since it made it less likely that Appellant would commit such negligent acts in the future, and of greater significance still, it would serve to have Appellant appreciate the nature and consequences of his actions. Point of Error No. Eight is overruled.

### Alleged Brady Violation

■■■■ In Point of Error No. Ten, Appellant contends that the State failed to pro-

vide him with copies of what he characterizes as inconsistent statements by the witness Paul Torres in violation of the rule announced in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under *Brady,* a prosecutor has an affirmative duty to turn over material, exculpatory evidence. Impeachment evidence is included within the scope of the term "exculpatory evidence." *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490 (1985).

Admitting he had been provided access to Torres' statements prior to trial, Appellant argues that he was entitled to copies of the statements.[6] Appellant cites no authority for this specific contention. In addition to providing Appellant access to the statements prior to trial by opening its file to Appellant, the State allowed Appellant additional access to the statements the evening before Torres testified. The State also provided Appellant with copies of the statements for use during his cross-examination of Torres. Appellant does not contend, and the record does not support a finding that Appellant did not have sufficient access to the statements to put them to effective use at trial, or that he could have put them to better use if he had been given copies of the statements in advance of trial. Under these facts, we find no *Brady* violation. *See Smith v. State,* 840 S.W.2d 689, 693 (Tex.App.—Fort Worth 1992, pet. ref'd) (if the accused received the *Brady* material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might or should have been); *Givens v. State,* 749 S.W.2d 954, 957 (Tex.App.—Fort Worth 1988, pet. ref'd) (the state's "open file" satisfied the State's duty to disclose exculpatory material to the defense). Accordingly, Point of Error No. Ten is overruled.

---

4. Tex.Code Crim.Proc.Ann. art. 42.12, § 11(a) currently provides that a judge may impose any reasonable condition of probation that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant.

5. In that regard, we note that the victim's mother stated during her testimony at punishment "if

he's a father, he should feel something too. He hasn't apologized or anything."

6. The prosecutor asserted and Appellant's counsel admitted that he had been provided access to the statements prior to trial. The record reflects that the State followed an "open file" policy.

### Alleged Charge Error

In his eleventh point of error, Appellant alleges that the trial court committed reversible error by failing to include the following language in the charge:

> For a person to be deemed 'criminally negligent' there must actually be both a substantial and an unjustifiable risk that the result will occur, and that the person acting should, under all the circumstances as viewed from his standpoint, have perceived the risk, and if you have a reasonable doubt as to whether such matters have been established, then you would be bound to acquit the defendant.

The trial court refused the particular language Appellant requested, but gave a definition which exactly tracked the statutory definition of criminal negligence. TEX.PENAL CODE ANN. § 6.03(d) (Vernon 1994). Further, the charge given contains substantially similar language to that requested by Appellant. As such, any error would be harmless. *See Hawkins v. State,* 660 S.W.2d 65, 81–82 (Tex.Crim.App.1983). Point of Error No. Eleven is overruled.

### Points Waived by Failure to Adequately Brief

Appellant failed to provide this Court with any authority in support of Points of Error Nos. Twelve, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, and Twenty. Failure to adequately brief a ground of error or to cite any authority presents nothing for review. *McWherter v. State,* 607 S.W.2d 531, 536 (Tex.Crim.App. 1980); *see Zuniga v. State,* 490 S.W.2d 577, 578 (Tex.Crim.App.1973). Accordingly, we overrule Point of Error No. Twelve and Points of Error Nos. Fourteen through Twenty.

### The Autopsy Photographs

In his thirteenth point of error, Appellant complains of the admission of two autopsy photographs which he asserts are irrelevant and unfairly prejudicial. The admissibility of gruesome photographs in a trial is governed by Rule 403 of the Texas Rules of Criminal Evidence. *Long v. State,* 823 S.W.2d 259 (Tex.Crim.App.1991). Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of [1] unfair prejudice, [2] confusion of the issues, or [3] misleading the jury, or [4] by considerations of undue delay, or [5] needless presentation of cumulative evidence." TEX.R.CRIM.EVID. 403. Upon sufficient objection to invoke Rule 403, the trial court must first consider whether the photograph is relevant as the rule only applies to relevant evidence. *Long,* 823 S.W.2d at 271. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM.EVID. 401.

After a determination of relevance, the trial court then has the duty to weigh the probative value or need for the evidence against the prejudicial danger or harm that is likely to result from its admission, and strike a balance. *Montgomery v. State,* 810 S.W.2d 372, 388 (Tex.Crim.App. 1990). The first step requires a measurement of the probative value of the offered evidence. This is done with a view towards the importance for which the evidence is offered, the availability of other means of proof, its inherent or relative probativeness, and other factors appropriate and unique to the circumstances of each case. *Long,* 823 S.W.2d at 272.

The next step involves the measurement of prejudicial danger or the harm likely to result from the admission of the evidence. In weighing the prejudicial effect of autopsy photographs, some of the factors to be considered are: number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed. *Long,* 823 S.W.2d at 272. Moreover, so long as a postautopsy photo aids the jury in understanding the injury and does not emphasize mutilation caused by the autopsy, the photo is admissible notwithstanding the fact that it was taken after the autopsy. *Burdine v. State,* 719 S.W.2d 309, 316 (Tex.Crim.App.1986); *Harris v. State,* 661 S.W.2d 106, 107 (Tex.Crim. App.1983).

In this case, the trial court admitted state's exhibits two and five, one of the victim's face, and one of the victim's brain taken after removal of the top portion of the skull. We cannot determine from the record whether the photos were color or black and white. The photographs were introduced during the testimony of the medical examiner and directly related to his testimony on the cause of death. The medical examiner testified that the cause of death was a basal fracture to the skull and brain contusions. The photographs are clearly relevant as they logically tend to make a proposition more or less likely, that the victim's death was caused by head injuries sustained in the accident. That proposition is of consequence to the central issue in this trial. The photographs have probative value in that they illustrated for the jury the fatal injuries inflicted upon the victim and aided the medical examiner in explaining the cause of death. The exhibits depict very little blood or gore. The photograph of the victim's brain is taken from an angle showing only the top of the head with the face and the rest of the body not in view. It is clinical in nature resembling a photograph of the human brain one might find in an anatomy textbook. Viewing the rule, which requires that the unfair prejudice "substantially" outweigh the probative value, we find that the trial court did not abuse its discretion in admitting the photographs. Point of Error No. Thirteen is therefore overruled.

Having overruled all points of error, the judgment of the trial court is affirmed.

LARSEN, Justice, concurring.

I join in the majority opinion, but write to express my reservations about the term of probation imposed upon Appellant requiring that he write letters of apology to the family of the deceased victim. In this case, the testimony of the victim's mother that "he has not apologized or anything" lends some support to this condition of probation. I counsel caution in imposing such conditions, however, for two separate reasons. First, I believe judicially mandating that criminal defendants experience and express sincere regret for their conduct is not a wise course, as such a requirement is impossible to enforce. Second, and more importantly, it seems that, rather than helping the deceased's family "get their life back together" as the judge found in this case, the receipt of such letters upon the anniversary of their loved one's death is more likely to cause the bereaved family needless pain. For these reasons, I believe such a condition of probation is generally ill-advised, and should be sparingly imposed. In this case, however, I believe the implied finding of the judge that such would assist the rehabilitation of the Appellant is supported by some evidence. I also conclude that some evidence supports the judge's finding that letters of apology would help the family "get their life back together." For these reasons, I concur.