Motion for Rehearing Overruled; Opinion of June 19, 2003 Withdrawn;
Affirmed and Substitute Opinion filed October 9, 2003









Motion for Rehearing Overruled; Opinion of June 19,
2003 Withdrawn; Affirmed and Substitute Opinion filed October 9, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-01272-CR

____________

 

RICHARD STADT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 179th District Court

Harris County, Texas

Trial Court Cause No. 859,259

 



 

S
U B S T I T U T E   O P I N I O N 

We
withdraw our opinion issued June 19, 2003, substitute the following opinion in
its place, and overrule appellant=s motion for rehearing.

Appellant
Richard Stadt was convicted by a jury of criminally negligent homicide.  See
Tex. Pen. Code Ann. '
19.05(a) (Vernon 2003).  The trial court
sentenced appellant to three years= confinement, but suspended the
sentence and placed appellant on community supervision for three years.  Asserting three points of error, appellant
appeals his conviction.  We affirm.








Procedural and Factual Background

On
January 31, 2000, appellant was driving a tractor-trailer rig southbound in the
right lane of Interstate 45 as he approached the Spring-Stuebner overpass in
Spring.  This particular stretch of
highway is considered to be very dangerous. 
Because of construction, there were no shoulders along the highway at
this location.  Instead, there were
concrete barriers located along the right edge of the roadway.  

As
appellant crossed the overpass, he changed lanes in an attempt to pass a
slower-moving vehicle.  Although the
posted speed limit is 55 mph, the State=s witnesses testified appellant was
traveling between 65 and 75 mph.  His
tire hit the right concrete barrier near the top of the overpass, causing the
front right portion of his truck to rise up. 
His truck ricocheted to the left, climbed over the guardrail and became
airborne into the oncoming northbound traffic. 
It hit a white pick-up truck, driven by complainant Dale Turner, and a
maroon 18-wheel rig, driven by complainant John Braun, before coming to rest on
the northbound side of the highway.  

Both
complainants were killed as a result of the accident.  Appellant escaped relatively unhurt and was
treated and released from a local hospital emergency room.  

In
February, 2000, a grand jury indicted appellant for the offense of criminally
negligent homicide in cause numbers 0837061 and 0837062.  See Tex.
Pen. Code Ann. ' 19.05(a).  In October 2000, the grand jury re-indicted
appellant for the greater offense of manslaughter in cause numbers 0859258 and
0859259.  See Tex. Pen. Code Ann. '
19.04(a) (Vernon 2003).  The State
proceeded to trial on cause number 0859259 on November 27, 2001.

At
the close of evidence, the trial court presented its proposed jury charge to
both parties.  The proposed charge
included the offenses of criminally negligent homicide and manslaughter.  Although appellant objected to inclusion of
the lesser offense, the jury received instructions on both offenses.








The
jury convicted appellant of criminally negligent homicide and recommended a
probated sentence.  The trial court
sentenced appellant to three years= confinement in the Texas Department
of Criminal Justice, State Jail Division, but suspended the sentence and placed
appellant on community supervision for three years. Appellant timely filed
notice of appeal. 

Issues on Appeal

On
appeal, appellant asserts (1) there is legally and factually insufficient
evidence for a jury to have found he committed criminally negligent homicide;
(2) the trial court erred when it instructed the jury on the lesser included
offense of criminally negligent homicide; and (3) the trial court erred when it
refused to quash appellant=s indictment for manslaughter.

I.  Sufficiency of the Evidence

In
his first point of error, appellant asserts the evidence is legally and
factually insufficient to support a jury finding that he committed criminally
negligent homicide.  No evidence exists,
argues appellant, that he was Acriminally negligent@
as this term is defined by Texas law.  We
disagree.

A.      Legal sufficiency

To
determine legal sufficiency, we view the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307,
319 (1979); Garrett v. State, 851 S.W.2d 853, 857 (Tex. Crim. App. 1993).  This standard of review applies to cases
involving both direct and circumstantial evidence.  King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995).  On appeal, this
court is not to reevaluate the weight and credibility of the evidence; rather,
we consider only whether the jury reached a rational decision.  See Muniz v. State, 851 S.W.2d 238,
246 (Tex. Crim. App. 1993).  The jury, as the trier of fact, is the sole
judge of the credibility of the witnesses. 
See Soto v. State, 864 S.W.2d 687, 691 (Tex. App.CHouston [14th Dist.] 1993, pet. ref=d).  








To
secure a conviction for criminally negligent homicide, the State must present
evidence that a person caused the death of an individual by criminal
negligence.  Tex. Pen. Code Ann. ' 19.05(a).  A person acts with Acriminal
negligence@ when he or she Aought
to be aware of a substantial and unjustifiable risk that the circumstances
exist or the result will occur.@ 
Tex. Pen. Code Ann. '
6.03(d) (Vernon 2003); Cooks v. State, 5 S.W.3d 292, 297 (Tex. App.CHouston [14th Dist.] 1999, no pet.); see Lewis v.
State, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975) (stating the key to
criminal negligence is found in the failure of the actor to perceive the
risk).  AThe risk must be of such a nature
and degree that the failure to perceive it constitutes a gross deviation from
the standard of care that an ordinary person would exercise under all the
circumstances as viewed from the actor=s standpoint.@  Tex.
Pen. Code Ann. ' 6.03(d).

In
the instant case, to survive a legal sufficiency challenge, there must be
evidence in the record that (1) appellant caused the death of complainants; (2)
appellant ought to have been aware there was a substantial and unjustifiable
risk of death from his conduct; and (3) appellant failed to perceive the risk
and his failure constituted a gross deviation from the standard of care an
ordinary person would have exercised under like circumstances.  See id.; Tex. Pen. Code Ann. ' 19.05(a).  We conclude the State met this burden.  

First,
it is uncontroverted that appellant caused the death of both complainants.[1]  








Second,
there is evidence appellant Aought to have been aware@
of the Asubstantial
and unjustifiable risk@ of death surrounding his conduct,
and that his failure to perceive this risk deviated grossly from the standard
of care exhibited by ordinary Abig rig@
drivers in like circumstances. 

(1)     Appellant Aought
to have been aware@ there was a substantial risk of
death if he made an error crossing the bridge.

The
following evidence suggests appellant Aought to have been aware@
that failure to exercise proper care on the Spring-Stuebner overpass would
result in a substantial and unjustifiable risk of death:

$                  
Appellant had driven over the Spring-Stuebner
bridge in the same or similar tractor-trailer approximately 300B400 times;

$                  
Appellant was familiar with the
bridge; was aware the lanes on the bridge were narrow; knew the speed limit
dropped immediately before the bridge=s entrance; and knew the bridge had been the site of
several fatal accidents; 

$                  
Appellant told two different
witnesses the day of the accident that he had been afraid of the bridge Afor a long time@; 

$                  
Appellant was aware tractor-trailers
needed to be operated in a safer manner than other vehicles Abecause there was less room for error@;

$                  
Appellant usually drove on the
bridge in the left-hand lane rather than in the right-hand lane next to the
concrete barrier; 

$                  
Drivers who frequented that stretch
of highway were aware the bridge was rough, narrow, and dangerous;

$                  
The bridge=s nickname in SpringCwhere the bridge was locatedCwas Adeath bridge@;

$                  
There was construction at the bridge
the day of the accident; 

$                  
The bridge had no shoulder at the
site of the accident and the concrete barrier hit by appellant=s rig was only 6 to 18 inches from the highway=s edge; 

$                  
Tractor-trailers should be driven 5
mph slower than posted speed limits in construction zones and tractor-trailer
drivers should slow down when they approach such overpassesCeven when driving the posted speed of 55 mph;

$                  
Experienced tractor-trailer drivers
(1) lose control in construction areas if they drive faster than 55 mph; (2)
feel their trucks bounce if they drive too fast; and (3) slow down if their
trucks begin to bounce; and 








$                  
Appellant=s rig was bouncing and weaving as he approached the
bridge, his speed was unsafe, and he Ashould have slowed down@ in order to prevent his tractor-trailer rig from
striking the right-hand concrete barrier. 

 

The
foregoing evidence supports a finding that appellant Aought
to have known@ that if he drove too fast or went
off the road even a couple of inches, there was a substantial risk of injury or
death to others. 

(2)     Appellant
Afailed
to perceive@
the risk of death and this failure deviated grossly from the standard of care
that an ordinary person would exercise under similar circumstances.

 

Although
evidence suggests appellant ought to have been aware of the danger of death on
the Spring-Stuebner bridge, his conduct indicates he failed to appreciate this
danger:

$                  
Appellant drove between 65 and 75
mph as he entered the bridge, despite a posted speed limit of 55 mph;

$                  
Appellant maintained his speed as he
approached the bridge, despite (1) the rest of the traffic slowing down; (2)
his rig bouncing; (3) his awareness there was a possibility of his right front
tire clipping the barrier; and (4) his awareness there had been numerous
accident-related deaths on the bridge;

$                  
Appellant changed lanes to pass
another vehicle, even though his normal routine was to remain in the left-hand
lane; and

$                  
Appellant took his eyes off the road
Ajust
to see what was going on around [him]@ and failed to keep a proper lookout as he approached the
bridge, despite his knowledge that the lanes were getting narrower. 

 

There
is also evidence to suggest appellant=s failure to appreciate the risk of
death was a gross deviation from the standard of care exercised by an ordinary
person in appellant=s situation: 

$                  
Defense witness Orville Sanders
testified he took extra precautions every time he drove over the bridge and, as
a former tractor-trailer driver himself, knew tractor-trailer drivers should
take even greater precaution; 

$                  
Several defense witnesses testified
appellant maintained his speed on the bridge while other traffic slowed down; 








$                  
The posted speed limit on the bridge
was 55 mph;[2]
and 

$                  
A professional tractor-trailer
driver and driving instructor who witnessed the accident testified that, in his
experience, tractor-trailer drivers are taught to drive with the flow of
traffic; they know to be alert to bobbing and weaving; they slow down when
their rigs bob and weave; they know speeds in excess of 55 mph are Atoo rough@ for taking a bridge like the Spring-Stuebner overpass;
and they travel five mph under the posted speed limits in construction zones.

 

We
conclude there was sufficient evidence to permit a rational jury to find  that ordinary persons in like circumstances
would have exercised greater care.  Thus,
all the essential elements of criminal negligence are satisfiedCnamely,
that appellant Aought to have perceived@
the risk of death surrounding his conduct, he failed to do so, and his failure
constituted Aa gross deviation@
from the standard of care that an ordinary person would exercise under all the
circumstances viewed from the standpoint of a driver of a tractor-trailer
rig.  See Tex. Pen. Code Ann. ' 6.03(d).  Accordingly, we find the evidence is legally
sufficient to uphold appellant=s conviction.

B.      Factual sufficiency

Appellant
also asserts the evidence is factually insufficient to support a jury finding
that he committed criminally negligent homicide.  To determine factual sufficiency, we view the
evidence in a neutral light and set aside the verdict only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim.
App. 2000).  Because appellant testified at the guilt
stage, and presented other exculpatory evidence, he contends the evidence
greatly outweighed the State=s evidence to the extent that the
contrary finding is clearly wrong and manifestly unjust.  See id. at 11.  The proper factual sufficiency standard of
review for the latter argument is whether the proof of guilt, although adequate
if taken alone, is greatly outweighed by contrary proof.  Id.








We
must review the evidence weighed by the jury tending to prove the existence of
the elemental fact in dispute, and compare it to the evidence tending to
disprove that fact.  Id. at
7.  The appellate court may find either
that the State=s proof of guilt was so obviously
weak as to undermine confidence in the jury=s determination, or when contrary
evidence is presented, that the finding of guilt was against the great weight
and preponderance of the evidence.  Id.
at 11.  However, a factual sufficiency
review must be appropriately deferential to avoid substituting our judgment for
the factfinder=s. 
Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).  We are not free to reweigh the evidence, but
must exercise our jurisdiction only to prevent a manifestly unjust result.  Id.

To
controvert the State=s evidence that appellant committed
criminally negligent homicide, appellant offered the following evidence:  

$                  
Appellant=s testimony that he was safety-conscious because he had
conducted a pre-trip inspection of his rig; stopped his truck to take a nap so
he would be rested during his trip; had his truck weighed; conducted a tire
inspection mid-trip; made a safe and proper lane change two miles before the
overpass; and checked his mirrors during his bridge-crossing;

$                  
Testimony that neither drugs nor
alcohol contributed to the accident;

$                  
Defense testimony that traffic was
light; weather was dry and clear; and visibility optimal;

$                  
Testimony that appellant was
traveling with the flow of traffic and that all traffic was exceeding the speed
limit; 

$                  
Testimony that appellant=s rig was not bouncing as it climbed the overpass; that
appellant was not driving at an unreasonable or careless speed; and that
appellant=s
engine was Agoverned@ at 65 mph;

$                  
Appellant=s familiarity with the road and overpass; 

$                  
Testimony that appellant=s drift outside his lane was minimal and that he only Aclipped@ the barrier;                                                                                     

$                  
Evidence that the barrier hit by
appellant was not 18 inches from the fog line, as claimed by the State, but
rather 6 inches; and

$                  
Testimony that the overpass was not
dangerous, not unsafe, and not widely known as Adeath bridge.@








Arguing
the evidence above Agreatly outweigh[s]@
the State=s proof, appellant asserts the State=s
evidence is Afactually insufficient.@  We disagree.

When
conflicts in evidence arise, an appellate court may not substitute its judgment
for that of the fact-finder.  See
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).  Reconciliation of conflicts in the evidence
is the exclusive province of the jury.  See
Cain v. State, 958 S.W.2d 404, 408B09 (Tex. Crim. App. 1997).  Unless the available record clearly reveals a
different result is appropriate, an appellate court must defer to the jury=s
determination concerning what weight to give contradictory testimonial evidence
because resolution often turns on an evaluation of credibility and demeanor,
and those jurors were in attendance when the testimony was delivered.  Johnson, 23 S.W.3d at 8.

Here,
appellant emphasizes evidence demonstrating his safety awareness: he did not
take drugs or alcohol, did not drive at an unreasonable or high rate of speed,
and did not drive in a way that would cause his trailer to bounce and be
unsafe, but there is also evidence to contradict these assertions.  For example, 

$                  
To rebut appellant=s claim that drugs and alcohol were not related to the
accident, the State offered evidence appellant told someone at the scene that
he was a Alittle
drowsy@
because he had taken some medication earlier in the day;

$                  
To rebut appellant=s claim he was driving safely and at a reasonable speed,
the State offered the testimony of witness Tom MarinelliCa professional truck driver and driving instructor with
22 years experience, who had completed three million miles in a tractor-trailer
without an accident.  Marinelli, who was
driving behind appellant at the time of the accident, testified the condition
of the overpass was rough; appellant=s rig bobbed and weaved as he entered the bridge; and
appellant=s
bobbing and weaving truck indicated appellant was driving Atoo fast@ for road conditions;








$                  
To rebut evidence appellant was
traveling Awith
the flow of traffic,@
the State offered (1) the testimony of Andrew Johnston, a motorist driving near
the accident site, who testified that when he entered the freeway behind
appellant=s
tractor-trailer and a white vehicle, Athe big rig was pulling away@ from the white vehicle; (2) the testimony of Officer
David Whitehead, who claimed appellant overtook him at a Apretty rapid pace@ and was in the process of passing his vehicle when
appellant struck the barrier; (3) the testimony of Marinelli, who claimed
appellant was going Atoo
fast@;
and (4) the testimony of appellant himself, who admitted he remembered Acoming up@ on Officer Whitehead=s pickup and moving into the right lane of traffic to
pass the pickup on the right; and

$                  
To rebut evidence appellant=s drift outside his lane was minimal and appellant only Aclipped@ the concrete barrier, the State offered pictures of
severe gouges in the barrierCas well as appellant=s own testimony that he knew the bridge was narrow and
knew his trailer needed to be operated in a safer manner than other vehicles Abecause there [was] less room for error.@

 

Viewing
the evidence in a neutral light, we find a jury reasonably could have rejected
appellant=s testimony and the testimony of
defense witnesses and concluded that, although appellant was aware of a number
of facts related to the risk of death on the bridge, he failed to appreciate
the substantial and unjustifiable risk his conduct created in light of those
facts.[3]  A factual sufficiency review must employ
appropriate deference to prevent an appellate court from substituting its
judgment for that of the fact finder, and any evaluation should not
substantially intrude upon the fact finder=s role as the sole judge of the
weight and credibility given to witness testimony.  Johnson, 23 S.W.3d at 7.  After conducting that review, we cannot say
the proof of guilt is greatly outweighed by contrary proof.  See id. at 11.  Accordingly, we find the evidence to be
legally and factually sufficient to support the jury=s
guilty verdict and overrule appellant=s first point of error.








II.  Lesser Included Offense

In
his second point of error, appellant asserts the trial court erred by
instructing the jury on the lesser included offense of criminally negligent
homicide because no evidence permitted the jury to rationally find that if
appellant was guilty, he was guilty only of the lesser offense.  We disagree. 
This issue is similar to appellant=s first issue challenging the legal
sufficiency of the evidence supporting the jury=s verdict finding appellant guilty
of criminally negligent homicide.  But in
this issue, appellant contends that because there is no evidence that he was
unaware of the risk created by his conduct, the jury charge improperly included
an instruction on criminally negligent homicide.

A.      Standard of review

The
trial judge has the legal duty and responsibility to prepare for the jury a
proper  charge distinctly setting forth
the law applicable to the case.  Tex. Code
Crim. Proc. Ann. art.
36.14 (Vernon Supp. 2003).  Article 37.08 codifies the common-law lesser
included offense and provides in a prosecution for an offense with lesser
included offenses, the jury may find the defendant not guilty of the greater
offense, but guilty of any lesser included offense.  Tex.
Code Crim. Proc. Ann. art. 37.08 (Vernon 1981).  Article 37.09 provides the test for
determining whether an offense is a lesser included offense pursuant to article
37.08.  See Tex. Code Crim. Proc. Ann. art. 37.09
(Vernon 1981).  The Texas Court of
Criminal appeals has articulated the test as follows:  A[F]irst, the lesser included offense
must be included within the proof necessary to establish the offense charged,
and second, some evidence must exist in the record that would permit
a jury rationally to find that if the defendant is guilty, he is guilty only
of the lesser offense.@ 
Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993)
(first emphasis added).  

As
a matter of federal and state law, a conviction for a lesser offense
constitutes an acquittal of the greater offense.  See Green v. United States, 355 U.S.
184, 190B91,
78 S. Ct. 221, 225 (1957); Tex. Code Crim.
Proc. Ann. art. 37.14
(Vernon 1981).








Appellant
concedes, as he must, the first prong of the test, that criminally negligent
homicide is a lesser included offense of manslaughter, because criminal
negligence is a lesser culpable mental state than recklessness.  Aliff v. State, 627 S.W.2d 166, 171
(Tex. Crim. App. 1982).  The issue,
therefore, is whether there is some evidence in the record that would
permit a jury rationally to find that if the defendant is guilty, he is guilty
only of the lesser offense, the second prong of the test articulated in Rousseau.

B.      Evidence Supporting the Second Prong of Rousseau

Regarding
the second prong of the Rousseau test, we focus on whether any evidence
exists in the record that would permit a rational jury to find that the
defendant is guilty only of criminally negligent homicide.  See Bignall v. State, 887 S.W.2d 21,
23 (Tex. Crim. App. 1994).  Anything more
than a scintilla of evidence is sufficient to entitle a defendant or the State
to a charge on the lesser included offense. 
See id.  All trial evidence
should be considered to determine if there is more than a scintilla of evidence
to support the requested charge.  Id.  The defense or the prosecution is entitled to
the charge regardless of which party offered the evidence, and regardless of
whether it is weak, impeached, or contradicted. See Bell v. State, 693
S.W.2d 434, 442 (Tex. Crim. App. 1985).[4]  








Proof
of a culpable mental state generally relies upon circumstantial evidence.  Dillon v. State, 574 S.W.2d 92, 94
(Tex. Crim. App. [Panel Op.] 1978). 
Ordinarily, it must be inferred from the acts, words, and conduct of the
accused and the surrounding circumstances. 
Fuentes v. State,  880
S.W.2d 857, 860 (Tex. App.CAmarillo 1994, pet. ref=d).  The issue of whether recklessness or criminal
negligence is shownCthat is, whether one is aware of the
risk or simply fails to perceive itCis a conclusion to be drawn through
inference from all the circumstances by the trier of fact.  See Dillon, 574 S.W.2d at 94; see
also Thompson v. State, 676 S.W.2d 173, 176B77 (Tex. App.CHouston [14th Dist.] 1984, no pet.) (finding proof of
defendant=s failure to perceive risk where
defendant drove her car at an excessive speed in a residential neighborhood
near a bus stop at a time when children were on their way to school).  

It
is not enough that the jury disbelieves evidence pertaining to the greater
offense; rather, there must be Asome evidence directly germane to
the lesser-included offense for the finder of fact to consider before an
instruction on a lesser-included offense is warranted.@
 Hampton v. State, 109 S.W.3d 437,
441 (Tex. Crim. App. 2003) (holding, in prosecution for aggravated sexual
assault, State-requested instruction on lesser included offense of sexual
assault not warranted when the only evidence supporting proposition that no
knife was used in alleged assault was State=s failure to find the knife; thus,
there was no evidence directly germane to lesser included offense for
factfinder to consider). 

Here,
appellant claims there was no affirmative evidence that he was unaware
of the risk his conduct created.  See
id.  We disagree.  Although it is true there was no declarative
statement made during trial that appellant did not know his behavior was
risky, there was circumstantial evidence from which a rational jury could infer
appellant was unaware of the risk his conduct created.

First,
there was testimony that appellant was driving faster than conditions
warranted.  Next, there was testimony
appellant ignored signs that he was losing control of his rig.  Finally, there was testimony appellant took
his eyes off the road at the most critical stage of his bridge-crossing.  In our view, this last piece of evidence
circumstantially suggests appellant was unaware of the substantial risk
associated with any failure to maintain lane integrity, because he averted his
eyes from the narrow lanes to his mirrors at the moment when lane integrity was
the most critical safety concern. 
Because evidence presented at trial indicated appellant was ordinarily a
safety-conscious person who would have modified his behavior had he realized
the danger of his actions, a jury could rationally infer appellant failed to
perceive the risk.








Whether
this evidence justified a lesser included offense charge is a function of
whether (a) anything more than a scintilla of evidence either affirmatively
refuted or negated an element of the greater offense (manslaughter), or (b) the
evidence on the issue is subject to two different interpretations, and one of
the interpretations negates or rebuts an element of the greater offense.  Arevalo v. State, 943 S.W.2d 887, 889
n.5 (Tex. Crim. App. 1997) (Arevalo I). 
Criminal negligence involves inattentive risk creation, that is, the
actor ought to be aware of the risk surrounding his conduct.  Todd v. State, 911 S.W.2d 807, 814
(Tex. App.CEl Paso 1995, no pet.).

We
conclude there was more than a scintilla of evidence from which a rational jury
could infer that an ordinary or reasonably prudent person ought to have been
aware that a substantial and unjustifiable risk of death is created when a
person knows that a particular stretch of highway has led to multiple deaths,
when he holds his speed above 60 miles per hour as he drives an
eighteen-wheeler onto a bridge where, as a result of construction, the lanes
narrow and provide no shoulder room.

We
also conclude there was more than a scintilla of evidence from which the jury
rationally could have inferred appellant, although familiar with the route he
was driving and the bridge where the collision occurred, failed to perceive
that risk.  See Thompson, 676
S.W.2d  at 176B77
(holding evidence sufficient to support finding of criminal negligence
where defendant was driving at high rate of speed, failed to slow down as she
approached intersection and failed to watch traffic light).  As stated earlier, evidence indicates
appellant was traveling in excess of the speed limit, failed to slow down when
others near him decreased their speed, failed to heed the commonly-accepted
warning signs that he was losing control of his rig, and averted his eyes from
the road to his mirrors, compromising his ability to maintain lane
integrity.  Tellingly, appellant
testified he had Ano clue@
as to why his accident happened and that nothing put him Aon
notice@
that something like this could happen. 








In
sum, we find the record contains more than a scintilla of evidence of appellant=s
failure to perceive the risk of death based on his conduct at the time of the
incident.  This evidence would permit a
jury rationally to find that if appellant is guilty, he is guilty only of
criminally negligent homicide.

Nevertheless
on rehearing, appellant asserts that, consistent with Arevalo II, the
evidence here does not justify the lesser included offense because it does not
negate every alternate theory of liability for the greater offense.  See Arevalo v. State, 970 S.W.2d 547,
549 (Tex. Crim App. 1998) (Arevalo II). 
In Arevalo II, and in other cases stating that principle, the Aalternate
theories@
were statutory theories elevating the offense from the lesser to the greater
offense.  See Feldman v. State, 71
S.W.3d 738, 752 n.9 (Tex. Crim. App. 2002) (explaining that in Arevalo II
the State presented evidence on all three theories of aggravation elevating
sexual assault to aggravated sexual assault, and the second prong of the Royster
test is satisfied only if credible evidence refutes or negates every theory
which elevates the offense from the lesser to the greater).  Here, the only element separating manslaughter
from criminally negligent homicide was the culpable mental state, i.e.,
whether appellant was aware, or unaware, of the risk of death resulting from
his conduct.  The manslaughter indictment
alleged acts supporting the charge, but they are not alternate theories that
require elevation of the offense from criminal negligence to manslaughter.  Instead, these acts, described in the
indictment as Areckless,@
are subject to two different interpretations, one of which negates appellant=s
awareness of the risk of death resulting from his conduct.  See Arevalo I, 943 S.W.2d at 889
n.5.  These acts, in combination with
other evidence introduced at trial, allowed a rational jury to conclude
appellant was unaware of the risk of death resulting from his conduct, thus
negating the language in the indictment alleging appellant=s
conduct was reckless.

Accordingly,
both prongs of the Rousseau test were satisfied, and the trial court did
not err in submitting an instruction on the lesser included offense of
criminally negligent homicide in the jury charge.  We overrule appellant=s
point of error two.








III.  Refusal to Quash Indictment

In
his third point of error, appellant asserts the trial court erred by refusing
to quash appellant=s indictment because the indictment
did not allege acts or circumstances that demonstrated reckless conduct.  We disagree.

A.      Standard of review

The
decision to grant a motion to quash is discretionary and so is reviewed under
an abuse of discretion standard.  See
Thomas v. State, 621 S.W.2d 158, 163 (Tex. Crim. App.
[Panel Op.] 1981), as limited by Geter v. State, 779 S.W.2d 403 (Tex. Crim. App. 1989); Hankins v. State, 85
S.W.3d 433, 436 (Tex.
App.CCorpus Christi 2002, no pet.).  A motion to quash should be granted only when
the language concerning the defendant=s conduct is so vague or indefinite
as to deny him effective notice of the acts he allegedly committed.  DeVaughn v. State, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988); Crum v. State, 946
S.W.2d 349, 359 (Tex.
App.CHouston [14th Dist.] 1997, pet. ref=d).  For an indictment to survive a timely motion
to quash, the face of the indictment must contain allegations of the facts
necessary to show that the offense was committed, bar subsequent prosecution
for the same offense, and give the defendant notice of the precise offense with
which he is charged.  Crum, 946
S.W.2d at 359.

Upon
review, we first determine if the notice given is sufficient.  Id. 
If it is, our inquiry is ended; if not, the record must be examined to
determine the impact of the deficiency on appellant=s
defense.  Id.; see also Hillin
v. State, 808 S.W.2d 486, 488B89 (Tex. Crim. App.
1991) (concluding that, in order to prejudice the substantial rights of the
defendant, such defect must be Ato such a degree that the accusation
fails to give adequate notice to the defendant so as to allow him to prepare a
defense@;
in other words, Athe object of the requirement of
notice . . . is to secure the defendant=s right to know the nature of the
charges against him@).








B.      Discussion

Generally,
an indictment that tracks the words of a statute is legally sufficient.  Lewis v. State, 659 S.W.2d 429, 431 (Tex. Crim. App. 1983); Crum, 946 S.W.2d at
360.  However, when a statute provides
more than one manner of committing a crime, the State must allege the
particular statutory means of committing the offense.  See Ferguson v. State, 622 S.W.2d 846,
851 (Tex. Crim. App. [Panel Op.] 1980) (finding
defendant may not be left to guess whether State would seek to prove one or all
types of defined conduct).  

In
addition, when Arecklessness@
or Acriminal
negligence@ is an element of an offense, the
State must allege the act or acts relied upon that constitute the reckless or
criminally negligent conduct.  Tex. Code Crim. Proc. Ann. art. 21.15
(Vernon 1989); Gengnagel v. State, 748 S.W.2d 227, 229B30
(Tex. Crim. App. 1988); Cruz v. State, 838
S.W.2d 682, 684 (Tex. App.CHouston [14th Dist.] 1992, pet. ref=d);
Hankins, 85 S.W.3d at 436. 
Indeed, it is never sufficient Ato allege merely that the accused,
in committing the offense, acted recklessly or with criminal negligence.@  Tex.
Code Crim. Proc. Ann. art.  21.15; Hankins, 85 S.W.3d at 437
n.4.

Here,
the State=s indictment[5]
alleged appellant Adid then and there unlawfully,
recklessly cause the death of [complainant] by operating his motor vehicle, a
deadly weapon, at an unreasonable speed, by failing to maintain a proper
lookout for traffic and road conditions, by failing to maintain a single lane
of traffic, and by changing lanes in an unsafe manner.@








Such
an indictment is proper.  First, it put
appellant on notice that the State was seeking a manslaughter conviction
because it alleged appellant Arecklessly cause[d] the death of
[complainant].@ 
See Tex. Pen. Code Ann. '
19.04(a).  See also DeVaughn, 749
S.W.2d at 67 (charging instrument must convey adequate notice from which
accused may prepare defense); Crum, 946 S.W.2d at 359 (motion to quash
should be granted only when language concerning defendant=s
conduct is so vague and indefinite as to deny him adequate notice).  Next, it alerted appellant to the acts upon
which the State planned to rely to prove appellant acted Arecklessly@Cnamely, that appellant operated his
vehicle at an unreasonable speed, failed to keep a proper lookout, failed to
maintain a single lane of traffic, and changed lanes unsafely.  See Tex.
 Code Crim. Proc.
Ann. art. 21.15.

Because
the State=s indictment adequately informed
appellant of the acts the State planned to rely upon to constitute Arecklessness,@
we conclude the indictment was sufficient. 
See Crume v. State, 658 S.W.2d 607, 608B09
(Tex. Crim. App. 1983) (indictment adequate where
State alleged defendant Adid . . . recklessly caus[e] the
death of the Complainant, by failing to guide his vehicle away . . . and by
failing to keep a lookout. . .@); Cruz, 838 S.W.2d at 684
(indictment adequate where State alleged defendant Aknowingly,
intentionally and recklessly cause[d] bodily injury to [victim] by striking her
with his body and causing her to fall . . .@) (emphasis deleted).[6]  








The
State was not required to plead evidentiary facts.  See Crum, 946 S.W.2d at 359B60;
Cruz, 838 S.W.2d at 684.  Rather,
it was only required to allege conduct a jury could rationally find to be
reckless under the circumstances of this case. 
See Cruz, 838 S.W.2d at 684.

Appellant, however, asserts the conduct alleged by the State
does not demonstrate recklessness; rather, it demonstrates Anegligence and nothing more.@ 
We disagree for two reasons.

First,
as stated earlier, the cases cited by appellant pertain to civil liability;
thus, his argument is unpersuasive.[7]  Second, it is not the purpose of the State=s indictment to catalog State
evidence and to prove recklessness; rather, it is to put appellant Aon notice@ that he is charged with recklessness
and to specify the acts which the State will ask the trier of fact to use in
inferring recklessness.  See George
E. Dix & Robert O. Dawson, 41 Tex.
Crim. Prac. & Proc. ' 20.171 at 627 (2001). 


Although
appellant relies heavily on Gengnagel to suggest his indictment should
have been quashed, that case may be distinguished from the case at bar.  In GengnagelCwhere defendant was charged with
indecent exposureCdefendant=s charging instrument tracked the Texas Penal Code for
indecent exposure and alleged defendant had Aexpose[d] . . . his genitals
. . . recklessly@; it was defective, however, because it did not specify how
defendant=s exposure was reckless.  See Gengnagel, 748 S.W.2d at 229B30; Tex.
Pen. Code Ann. ' 21.08(a) (Vernon 1994).

Here,
appellant=s indictment also tracks the language
of a Texas statute by alleging appellant Arecklessly caused the death of
[complainants]@; but, here, the State also has  included the acts it planned to use to prove
appellant=s recklessness:  Aby operating . . . at an unreasonable
speed, by failing to maintain a proper lookout . . ., by failing to maintain a
single lane . . ., and by changing lanes in an unsafe manner.@ (emphasis added).  See Tex.
Pen. Code Ann. ' 19.04 (Vernon 1994).








Finding the State=s indictment proper, we conclude the trial court did not
err in refusing to grant appellant=s motion to quash. 
Accordingly, we overrule appellant=s third point of error.          Having
overruled all of appellant=s points of error, we affirm appellant=s conviction  for
criminally negligent homicide.

 

 

 

/s/        John S. Anderson

Justice

 

Judgment rendered and Substitute
Opinion on Motion for Rehearing filed October 9, 2003.

Panel consists of Justices Yates,
Anderson, and Frost.

PublishCTex. R. App. P.
47.2(b).











[1]  Appellant
admits he caused the death of complainants, but asserts his conduct constituted
only Aordinary negligence@ rather
than Acriminal negligence.@  See Rowan v. Allen, 134 S.W.2d 1022,
1025 (Tex. 1940); Ray v. Zackey, 329 S.W.2d 350, 351 (Tex. Civ. App.CWaco 1959, no writ); Wood v. Orts, 182 S.W.2d
139, 140 (Tex. Civ. App.CSan Antonio 1944, writ dism=d); Glassman v. Feldman, 106 S.W.2d 721, 722B23 (Tex. Civ. App.CAmarillo
1937, no writ).  His argument is of no
moment.

 

First, the Texas cases appellant cites all
involve civil liability, not criminal convictions.  A finding of Agross
negligence@ in a civil case is much more akin to a finding of Arecklessness@ in a
criminal case, not Acriminal negligence.@  Transp. Ins. Co. v. Moriel, 879 S.W.2d
10, 20 n.10 (Tex. 1994).  Second, the
criminal cases appellant cites from other jurisdictions are not binding on this
court:  State v. Larsen, 999 P.2d
1252 (Utah Ct. App. 2000); and State v. Garrett, 525 So. 2d 1235 (La.
Ct. App. 1988).  Finally, none of the
cases cited by appellant involves a tractor-trailer rig.  Evidence presented at trial suggests
tractor-trailer drivers are held to a different standard of care than those
driving automobiles.





[2]  Texas law
provides that A[a] speed in excess of the limits . . . is prima facie
evidence that the speed is not reasonable and prudent and that the speed is
unlawful.@  Tex. Transp. Code Ann. ' 545.352(a) (Vernon Supp. 2003).





[3]  Appellant
makes conclusory statements that there is Ano
evidence@ to support a finding appellant failed to perceive the
risk of death.  Indeed, he asserts the
contrary: that the evidence supports a finding appellant knew of the
risk.   The only inquiry, asserts appellant, is
whether or not appellant disregarded the risk. 
We disagree. The test is whether appellant was unaware of the risk of
death that could result from his conduct.

 

Risk perception may be proved
inferentially.  See, e.g.,  Mosley
v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998) (AThe jury
may infer the intent to kill from the use of a deadly weapon unless it would
not be reasonable to infer that death or serious bodily injury could result
from the use of the weapon.@).  Here, the
jury was free to choose to: (1) reject the State=s
evidence; (2) interpret it as supporting the inference appellant was aware of
the risk; or (3) interpret it as supporting the inference appellant was unaware
of the risk.  The jury chose the latter.





[4]  The second
prong of the Rousseau test applies to the State as well as to
defendants.  Arevalo v. State, 943
S.W.2d 887, 890 (Tex. Crim. App. 1997). 





[5]  Although
appellant was indicted and charged in two separate cause numbers for having
caused two separate deaths, the State proceeded to trial on only one of the
charges.





[6]  See also Arredondo v. State,
582 S.W.2d 457, 459 (Tex. Crim. App. [Panel Op.] 1979) (finding indictment
adequate where State alleged defendant recklessly caused victim=s death by Agrabbing the steering wheel of a motor vehicle and
pulling [it] to the right . . . thereby recklessly . . . causing . . . vehicle
to veer@); Townsley  v. State, 538 S.W.2d 411, 411, 412B13 (Tex. Crim. App. 1976) (indictment adequate where State alleged defendant
recklessly caused victim=s
death Aby
driving . . . at an excessive rate of speed . . . and recklessly causing said
vehicle to run off the roadway@); State v. Flores, 878 S.W.2d 651, 652B53 (Tex. App.CCorpus Christi,
1994) (indictment adequate where State alleged defendant Arecklessly cause[d] the death of an individual . . . [by]
driving and operating a motor vehicle . . . into the rear end of a vehicle
occupied by [victim]@), aff=d 896 S.W.2d 198
(Tex. Crim. App. 1995); State v. Emanuel, 873 S.W.2d 108, 108, 110 (Tex. App.CDallas
1994, no pet.) (indictment adequate where State alleged defendant Arecklessly cause[d] bodily injury . . . by striking .
. . complainant with a belt.@). 

 

For authority on applying section  21.15 to the charge of Acriminal negligence,@ see Graham v. State,
657 S.W.2d 99, 103B04 (Tex. Crim. App.
1983) (indictment adequate where State alleged defendant caused victim=s death Aby criminal negligence . . . by operating a motor vehicle
. . . [by] causing his vehicle to collide . . . by . . . engaging in a contest
of speed,@ as
well as by failing to obey signal, keep a proper lookout, maintain control, and
guide his vehicle away from victim); Thompson v. State, 676 S.W.2d 173,
177 (Tex. App.CHouston [14th Dist.]
1984, no pet.) (charging instrument adequate where State alleged defendant
caused death of victim by criminal negligence by Aoperating her vehicle at a greater rate of speed than was
reasonable and prudent . . . and by failing to keep a proper lookout@); and State v. Sonnier, 773 S.W.2d 60, 61, 63 (Tex. App.CHouston
[1st Dist.] 1989, no pet.) (charging instrument
adequate where State alleged defendant Aby criminal negligence cause[d] the death of an
individual,  . . . by driving a motor
vehicle . . . at a greater speed than was reasonable and prudent under the
existing conditions, to wit:  a two lane
roadway with an unimproved shoulder while approaching a curve and a railroad
crossing . . . causing the vehicle . . . to run off the roadway@).





[7]  See supra note
1.