

**NUMBER 13-07-00368-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ALBERT GARCIA,**                                                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                         **Appellee.**

---

**On appeal from the 36th District Court of San Patricio County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellant, Albert Garcia, appeals his conviction for the murder of Andres Amador. After finding Garcia guilty, the jury assessed punishment at life imprisonment. *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 2003). In seven issues, Garcia claims that (1) the evidence is legally and factually insufficient to support (a) his conviction and (b) the jury's finding that his actions were not the result of sudden passion; and (2) the trial court erred

by not including in the jury charge his requests for the lesser included offenses of manslaughter, criminally negligent homicide, and aggravated assault. We affirm.

## I. BACKGROUND

The events surrounding Andres's death stem from an altercation between Andres and Garcia. On November 24, 2005, Mathis County Police Officers Henry Guerra and Greg Hinojosa were called to a shooting at Andres's parents' house on Franklin Street. Upon arriving at the residence, the officers saw several individuals surrounding Andres, who was lying on the ground and unresponsive. Andres was taken by ambulance to a nearby hospital. After the ambulance left, Officer Guerra spoke to Adolfo Amador, Andres's brother, who provided a list of potential suspects, which included Garcia. The officers left the scene to search for Garcia, but they were called back to the residence shortly thereafter because a drive-by shooting had taken place. One witness identified the shooter's car and provided Officer Guerra with a license plate number. The car was found later that night, and the driver, J.R., a juvenile, was arrested. Andres died before reaching the hospital. Several months later, Garcia was apprehended in Louisiana, and he was indicted for Andres's murder.

At trial, the State presented the testimony of numerous responding officers, including Officers Guerra and Hinojosa. The officers' testimony provided background into the events immediately following the shooting and the investigation that led to the apprehension of several criminal participants, including Garcia. Ray Fernandez, M.D., a medical examiner, testified as to the results of an autopsy report. Fernandez testified that Andres had cocaine and marihuana in his system, but the presence of drugs was not the cause of death. Fernandez removed three pellets from Andres's body, and he concluded

2

that gunshot wounds were the cause of death.

J.R. testified for the State about his involvement in the shooting. On November 24, 2005, J.R. was driving around with Garcia, a friend he had known about a year, and two female passengers, when Garcia received a phone call from Jason Rodriguez, the Amadors' neighbor. J.R. overheard the conversation over the cell phone's speaker. Rodriguez told Garcia that he needed his help because "these dudes are messing with me, and bring the gun." J.R. then drove Garcia to a friend's house, where Garcia exited the car and returned holding a shotgun and in the company of Luis Marquez. The group then drove to Rodriguez's house, and Garcia and Marquez exited the car. J.R. testified that it was dark, but he saw Garcia talking to Andres. J.R. further testified that he saw Garcia shoot three or four shots at Andres, and then Garcia ran back to the car exclaiming, "I think I shot him[,] I think I shot him. If I did[,] I didn't mean it." The group drove to Rodriguez's mother's house, and Garcia fled into the woods. J.R. then drove Rigo Garcia, Albert Garcia's brother, and Marquez back to the Amadors' house so that Rigo could execute a drive-by shooting. Later that day, J.R. was apprehended by police. J.R. testified at Garcia's trial subject to a plea bargain with the State.

The State also presented the testimony of Albert "Red" Del Bosque Amador, Andres's brother, about the events that took place before and during the shooting. He testified that on November 24, 2005, he got into an altercation in Rodriguez's yard. Red claimed that he punched Rodriguez and that Rodriguez returned to his house stating that he was going to call some people. After entering his house, Rodriguez exited with a brick, which he threw at Red. Although the brick hit him, Red claimed that he ignored it and entered his parents' house, where several of his relatives had gathered for Thanksgiving.

3

Later, several individuals appeared on the Amadors' lawn yelling and screaming. Garcia joined the individuals, and shouted to Red, "I'm going to kill you." Red further testified that he and Andres walked out of the Amadors' house as Garcia was screaming; Garcia then opened fire.

Garcia testified in his own defense. Garcia testified that he had visited Rodriguez's house before the shooting, and during that visit, he witnessed an altercation between Andres and "Wilo" Trevino. Garcia testified that Andres struck Trevino with a bat and that Red had a black handgun, but that he never took it out. Garcia left the scene, but he returned to Rodriguez's house later that day. Garcia testified that he returned to Rodriguez's house in a car driven by J.R. to return a shotgun to Rodriguez; he was confronted by Andres and Red when he arrived outside of Rodriguez's house. During Garcia's second visit, Garcia testified that Andres pulled out a gun and pointed it at him. Garcia fired a warning shot from the shotgun into the air and three shots in the direction of Andres and Red because he feared for his life and wanted to scare them. After the third shot, Garcia heard Andres scream and he "freaked out and ran back to the car." He then escaped in the car.

On cross-examination, the State questioned Garcia about his mental state during the shooting. The following exchange transpired:

[State]:     Okay. So you did shoot Andres Amador with a firearm, and the firearm was a shotgun?

[Garcia]:    Yes, sir.

[State]:     Okay. Are you saying that you did not intentionally or knowingly shoot at Andres?

[Garcia]:    Yeah. Yes, sir. I am saying that I didn't intentionally or

4

knowingly shoot at him.

[State]:        Okay. A moment ago—I guess it was before lunch you had testified that you did shoot at him, right?

[Garcia]:       Yes, sir, I did.

[State]:        Okay.  So did you intend to shoot at him?

[Garcia]:       Yes, sir.  I felt my life was in danger.

[State]:        Okay.  And when you shot at him did you know that shooting a shotgun at somebody could cause the death of somebody?

[Garcia]:       Yes, sir, I did.

After the evidence was presented, Garcia proposed that the jury be instructed on the law of manslaughter, criminally negligent homicide, deadly conduct, and aggravated assault.  According to Garcia, his testimony provided evidence to support an instruction on these lesser included offenses.  The trial court, however, overruled Garcia's requests.  Instead, the jury was instructed on the law of murder, accomplice testimony, self-defense, and deadly force; it found Garcia guilty of murder.  During the punishment phase, the jury was instructed that if Garcia established by a preponderance of the evidence that he acted out of sudden passion arising from an adequate cause, then the offense was a second-degree felony; otherwise, it was a first-degree felony.  The jury found that Garcia's actions were not the result of sudden passion arising from adequate cause, and it assessed punishment at life in prison.  Garcia filed a motion for new trial, which the trial court overruled.  The trial court signed a judgment reflecting the jury's verdict and punishment.  This appeal ensued.

## II. LEGAL AND FACTUAL SUFFICIENCY

By his fourth and fifth issues, Garcia contends that the evidence is factually and

5

legally insufficient to support his conviction for murder.  In his sixth and seventh issues, Garcia argues that the evidence is legally and factually insufficient to support the jury's negative finding on the punishment issue of sudden passion.

## A.  Standards of Review

When reviewing the legal sufficiency of the evidence, we consider all the record evidence in the light most favorable to the jury's verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found the accused guilty of all of the elements of the offense beyond a reasonable doubt. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319(1979)).  Further, our review encompasses all the evidence, whether properly or improperly admitted.  *See Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

In a factual sufficiency review, we view all of the evidence in a neutral light and ask whether the fact-finder was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006).  Evidence may be factually insufficient if the evidence is "so weak" that the verdict "seems clearly wrong or manifestly unjust," or the verdict is "against the great weight and preponderance of the evidence." *Id.* at 414-15, 417; *see also Marshall*, 210 S.W.3d at 625.  A verdict is clearly wrong and manifestly unjust if the jury's finding "shocks the conscience" or "clearly demonstrates bias."  *Garza v. State*, 213 S.W.3d 338, 344 (Tex. Crim. App. 2007) (citing *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)).  We measure the factual sufficiency of the evidence against a hypothetically correct jury charge authorized by the

indictment. *See Fuller v. State*, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002); *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001); *Malik v. State*, 953 S.W.2d 234, 236-40 (Tex. Crim. App. 1997).

**B.      Applicable Law**

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1), (2). Garcia contends that he used deadly force against Andres in self-defense. A person is generally justified in using deadly force against another if he reasonably believes that deadly force is necessary to protect himself against the other's use or attempted use of unlawful deadly force, and a reasonable person in the actor's situation would not have retreated. *Id*. §§ 9.31(a), 9.32(a) (Vernon Supp. 2007). A defendant has the burden of producing some evidence to support a claim of self-defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).

Once the defendant produces some evidence, the State then bears the burden of persuasion to disprove the raised defense. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). The burden of persuasion does not require the State to produce evidence; it requires only that the State prove its case beyond a reasonable doubt. *Id*. Thus, to convict a defendant of murder after he has raised the issue of self-defense, the State is required to prove the elements of the offense beyond a reasonable doubt and to persuade the jury beyond a reasonable doubt that the defendant did not kill in self-defense. *See id.* at 914.

After the jury convicted Garcia of murder, it entered a negative finding on the issue of sudden passion. At the punishment stage of a murder trial, "the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from adequate cause." TEX. PENAL CODE ANN. § 19.02(d). "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed." *Id*. § 19.02(a)(2). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id*. § 19.02(a)(1). If the defendant proves the issue by a preponderance of the evidence, the offense is reduced to a second-degree felony. *Id*. § 19.02(d).

## C.    Analysis

On appeal, Garcia argues that the evidence is legally and factually insufficient to support his murder conviction because he did not act knowingly and intentionally when he shot Andres. Garcia argues that the State did not establish that he had the requisite intent when he returned to Rodriguez's house and that the warning shot he fired evidences that he did not intend to kill Andres. Intent to kill is a question of fact determined by the jury from all the facts and circumstances in evidence. *McWhorter v. State*, 957 S.W.2d 928, 930 (Tex. App.–Beaumont 1997, no pet.). However, proof of a culpable mental state almost invariably depends upon circumstantial evidence. *Martin v. State*, 246 S.W.3d 246, 261 (Tex. App.–Houston [14th Dist.] 2007, no pet.). Intent can be inferred from the acts, words, and conduct of the defendant. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).

In the instant case, Garcia testified that he shot in the direction of Andres and Red, but that he meant to scare them and not to kill them. Garcia's self-serving testimony is the only piece of evidence that cuts against the element of intent. On the other hand, the jury heard Red's testimony that Garcia shouted out, "I'm going to kill you," some time before the shooting occurred. Under a legal and factual sufficiency review, the fact finder is the sole judge of the witness's credibility and the weight given to the witness's testimony. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (legal sufficiency review); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (factual sufficiency review). The jury could have believed Red's testimony regarding Garcia's exclamation. The record, therefore, contains legally and factually sufficient evidence regarding Garcia's intent. Garcia's fourth and fifth issues are overruled.

Next, Garcia argues that the quality and quantity of the evidence presented established his punishment issue of sudden passion and that the jury's answer rests on legally and factually insufficient evidence. Garcia further argues that during his second visit to Rodriguez's house, he intended only to return Rodriguez's shotgun, but that Andres brandished a handgun. Garcia claims he fired on Andres and Red because the shock of being confronted with a gun caused him to be incapable of cool reflection.

In conducting our legal sufficiency review, we look for only evidence that supports a negative finding on the sudden passion question. *Cleveland v. State*, 177 S.W.3d 374, 387 (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd)*; Howard v. State*, 145 S.W.3d 327, 334 (Tex. App.–Fort Worth 2004, no pet.). In this case, we note that Garcia was the only witness who testified that Andres was armed when he was shot. None of the other

9

witnesses testified that they saw Andres with a gun when Garcia shot him. Thus, there is some evidence to show that Garcia was not confronted by an armed antagonist. The remaining relevant evidence shows that Garcia witnessed an aggressive episode between Andres and Trevino earlier during the day and that he returned to Rodriguez's house with a shotgun to help Rodriguez deal with neighborhood tensions. Thus, the sudden passion that Garcia claims to have experienced may not have been "directly caused by" Andres's provocation, but may have been unrelated. The record, therefore, contains legally and factually sufficient evidence to support the jury's negative finding on sudden passion; therefore, Garcia's sixth and seventh issues are overruled.

### III. CHARGE ERROR

By his first, second, and third issues, Garcia contends that the trial court erred in not instructing the jury on the lesser included offenses of involuntary manslaughter, criminally negligent homicide, and aggravated assault.

### A.     Standard of Review

"When reviewing charge errors, an appellate court must undertake a two-step review: first, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal." *Abdnor v. State*, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994). We use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser-included offense. *See Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006); *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005). The first step is to determine whether an offense is a lesser-included offense of the alleged offense. *Hall v.*

10

*State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007); *Salinas*, 163 S.W.3d at 741. This determination is a question of law and does not depend on the evidence to be produced at the trial. *Hall*, 225 S.W.3d at 535.

An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006). If the greater offense may be committed in more than one manner, the manner alleged will determine the availability of lesser-included offenses. *Hall*, 225 S.W.3d at 531.

The second step is to determine if there is some evidence that would permit a rational jury to find that the defendant is guilty of the lesser offense, but not guilty of the greater. *Id*. at 536; *Salinas*, 163 S.W.3d at 741; *Feldman v. State*, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge on the lesser offense. *Hall*, 225 S.W.3d at 536. "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003). We review

11

all evidence presented at trial to make this determination. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). If the evidence raises the issue of a lesser-included offense, a jury charge must be given based on that evidence, "whether produced by the State or the defendant and whether it be strong, weak, unimpeached, or contradicted." *Id*. at 672 (quoting *Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985)).

**B.    Applicable Law**

A person commits manslaughter "if he recklessly causes the death of an individual." TEX. PENAL CODE ANN. § 19.04(a) (Vernon 2003).  A person is reckless when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances surrounding his conduct exist or the result will occur.  *Id*. § 6.03(c) (Vernon 2003).

Criminally negligent homicide involves causing the death of another by criminal negligence. *Id*. § 19.05(a) (Vernon 2003).  A person is criminally negligent when he ought to be aware of a substantial and unjustifiable risk that the circumstances surrounding his conduct exist or the result will occur.  *Id*. § 6.03(d).  Criminal negligence is a less culpable mental state than reckless. *Conroy v. State*, 843 S.W.2d 67, 71 (Tex. App.–Houston [1st Dist.] 1992, pet. ref'd).  Criminal negligence involves inattentive risk creation—the actor ought to be aware of the risk surrounding his conduct or the results thereof. *Lugo v. State*, 667 S.W.2d 144, 148 (Tex. Crim. App. 1984).

Reckless conduct involves conscious risk creation; that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards that risk. *Id*. At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct; the key to criminal negligence is found in the failure of the actor to perceive the

12

risk. *Id*. Before a charge on criminally negligent homicide is required, the record must contain evidence showing an unawareness of the risk. *Mendieta v. State*, 706 S.W.2d 651, 652 (Tex. Crim. App. 1986).

**C.     Analysis**

The record does not establish that Garcia, if guilty, was guilty only of the lesser-included offense of manslaughter.  Garcia admits that he intentionally shot Andres in self-defense because Andres brandished a gun, and Garcia feared for his life.   The commission of an act clearly dangerous to human life suffices to support a conviction for murder under section 19.02(b)(2) of the penal code and is not a reckless act. TEX. PENAL CODE ANN. § 19.02(b)(2).  And one cannot recklessly act in self-defense. *Johnson v. State*, 915 S.W.2d 653, 659 (Tex. App.–Houston [14th Dist.] 1996, pet. ref'd); *Avila v. State*, 954 S.W.2d 830, 843 (Tex. App.–El Paso 1997, pet. ref'd) (holding intentional conduct is implicit in claim of self-defense). The trial court did not err in refusing Garcia's requested charge on manslaughter.  Garcia's first issue is overruled.

Regarding Garcia's request for an instruction on criminally negligent homicide, Garcia testified that he knew shooting a shotgun at someone could kill that individual. Additionally, the record is devoid of any evidence showing that Garcia was unaware of the risk of shooting the shotgun at Andres.  The trial court, therefore, did not err in refusing to instruct the jury on the offense of criminally negligent homicide.  Garcia's second issue is overruled.

Finally, we reach Garcia's third issue, which involves his request that the jury be charged on aggravated assault.  In certain circumstances, aggravated assault can be a

lesser-included offense of murder. *Forest v. State*, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999); *Sledge v. State*, 860 S.W.2d 710, 713-14 (Tex. App.–Dallas 1993, pet. ref'd). A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. *See* TEX. PENAL CODE ANN. § 22.01 (Vernon Supp. 2007). A person commits aggravated assault if the person commits assault and causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of the assault. *See id.* § 22.02 (Vernon Supp. 2007).

In this case, Andres died as a result of homicide. But, there is evidence, from Red's testimony, that Garcia intended to kill one of the Amadors. Therefore, the trial court did not err in refusing to charge the jury on aggravated assault. A murder defendant is not entitled to an instruction on the lesser-included offense of aggravated assault when the evidence showed him, at the least, to be guilty of a homicide. *Forest*, 989 S.W.2d at 367. Garcia's third issue is overruled.

## IV. CONCLUSION

The trial court's judgment is affirmed.

ROGELIO VALDEZ
Chief Justice

Do not publish. TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and filed
this the 21st day of August, 2008.

14